

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DGR:MRG/JOE                                    *271 Cadman Plaza East*
F. #2021R00923                                 *Brooklyn, New York 11201*

November 8, 2023

<u>By ECF</u>
The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                    Re:     <u>United States v. Braden John Karony et al., 23-CR-433 (ERK)</u>

Dear Judge Komitee:

        The government respectfully submits this letter, in advance of the defendant's
November 8, 2023 detention hearing in the District of Utah,[1] seeking the detention of the
defendant Braden John Karony, who, together with his co-defendants and other co-conspirators,
conducted a series of fraudulent schemes through Safemoon US LLC ("Safemoon"), a crypto
issuer of digital Safemoon Tokens (or "SFM"), over the course of approximately fifteen months
in 2021-2022.  The defendant is charged with one count of securities fraud conspiracy in
violation of 15 U.S.C. §§ 78j and 78ff and 18 U.S.C. § 371; one count of wire fraud conspiracy
in violation of 18 U.S.C. §§ 1343 and 1349; and one count of money laundering conspiracy in
violation of 18 U.S.C. § 1956(h).  The defendants, including Karony, fraudulently diverted and
misappropriated tens of millions of dollars' worth of victims' funds for personal benefit.
Because the defendant has significant foreign ties, including that, since April 2021, he has
primarily resided in the United Kingdom and traveled to other international locations, and can
access digital assets and dissipate victim funds from anywhere in the world, he is a grave risk of
flight and danger to the community.  Therefore, he should be detained pending trial.

---

        [1]      An Assistant United States Attorney in the District of Utah will provide
content contained in this memorandum to the Honorable Daphne A. Oberg, who is presiding
over the defendant's detention hearing in the District of Utah.  The government will apprise
this Court of the result of the defendant's detention hearing and follow up with additional
submissions as appropriate.

I.      Background

        A.      Offense Conduct

        As alleged, the defendant, together with his co-defendants Kyle Nagy ("Nagy"), Thomas Smith ("Smith") and other unindicted co-conspirators, were the developers and other principals of Safemoon, a crypto project that offered and sold Safemoon Tokens SFM, digital assets traded on a blockchain, to investors based on various material misrepresentations and omissions.  Those misstatements included a promise that Safemoon would enrich investors by, among other things, imposing a 10% tax on every purchase and sale of SFM that would inure to investors.  Safemoon promised investors that half of the 10% tax would be paid back to investors in "reflections," i.e., quasi-dividends, and the other half would be sent to "locked" liquidity pools that would increase liquidity in SFM and thus benefit investors by allowing them to more easily trade SFM.  Safemoon also promised investors that SFM would be a "deflationary" token in that Safemoon would decrease the supply of SFM over time by "burning" SFM on the Binance Smart Chain.

        In reality, the defendant, his co-conspirators and others perpetrated a series of fraudulent schemes to defraud current and prospective SFM investors by retaining access to the purportedly "locked" liquidity pools, which allowed them to intentionally steal millions of dollars' worth of SFM and other tokens for their personal benefit.  The defendant, his co-conspirators and others did so, notwithstanding their repeated public denials that they personally held or traded SFM.  The defendant then laundered the SFM and other tokens through various blockchain wallets and ultimately liquidated them to, among other things, buy an approximately $2 million home in Utah and a luxury vehicle, fund personal investments and pay for his international travel and lavish living expenses in the United Kingdom.  The following is a picture of the 8,000 square foot, 6 bedroom, and 5 ½ bath home the defendant bought with approximately $2 million in stolen investor money:



2

Notwithstanding his purchase of the residence, as described in detail below, the defendant has not resided consistently in the United States.  Indeed, the defendant is due to close on a sale of the residence in December 2023.  As noted, the defendant used a series of digital-wallet addresses accessible from anywhere in the world to perpetrate these frauds and then launder the proceeds of his crimes.  Those wallets may contain victim's funds.  The defendant maintains access to those wallets, which are accessible only with private alphanumeric keys in the defendant's possession.

### B.     The Instant Indictment and the Defendant's Arrest

On October 31, 2023, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant and his co-defendants Nagy and Smith with one count of securities fraud conspiracy in violation of 15 U.S.C. §§ 78j, 78ff and 18 U.S.C. § 371; one count of wire fraud conspiracy in violation of 18 U.S.C. § 1349; and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h).  That same day, the court issued an arrest warrant for the defendant.

The defendant was arrested in the evening of October 31, 2023 at Salt Lake City international airport, after arriving from a flight from Miami, Florida.  The defendant previously flew from London, England to Miami, Florida on October 27, 2023—the first time he has been in the United States in almost five months.  The defendant had a ticket to return to the United Kingdom on November 8, 2023.

### C.     The Defendant Has Significant Ties and Consistently Traveled Between the U.S. and U.K. Since April 2021

The defendant is engaged to a citizen of the United Kingdom who resides in the United Kingdom, and the defendant planned to get married in the United Kingdom.  The defendant has resided primarily in the United Kingdom since Safemoon's launch in March 2021, with only brief travel to the United States for significant events.  In fact, after the government subpoenaed a witness in this case who informed the defendant's co-conspirators, including co-defendant Kyle Nagy, of the subpoena, defendant Karony traveled to the United Kingdom in June 2023, only returning on October 27, 2023, more than twenty weeks later, for a memorial service and civil court appearance.  Even then, the defendant was due to be in the United States for less than two weeks.  Around the same time Karony left for the United Kingdom, co-defendant Kyle Nagy fled the United States and remains at large.

In addition, the defendant applied to renew his passport at the United States embassy in London in August 2023.  Notably, at the time of this renewal, the defendant's existing passport remained valid until October 2029, thus raising the question whether the renewal was sought for any reason other than to allow him to travel internationally with a valid passport without the need to return to the United States for a longer period of time.

II.      Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The Bail Reform Act provides for a detention hearing in any case that involves "a serious risk that [the defendant] shall flee." Id. §3142 (f)(2). After the hearing, if a judicial officer concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." Id. § 3142(e)(1).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

In detention proceedings, evidentiary rules do not apply and the government is permitted to proceed by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings); Ferranti, 66 F.3d at 542 (same); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same). As the Second Circuit has explained: "[I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers." See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, Section 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.; United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

III.     The Court Should Detain the Defendant Pending Trial

For the reasons discussed below, the defendant cannot establish that he does not pose a flight risk or a danger to the community if released pending trial. For that reason, no combination of bail conditions will ensure the defendant's continued appearance before the court and safety of the community. As such, the Court should issue a permanent order of Detention.

4

A.      Risk of Flight

All four Bail Reform Act factors weigh in favor of the conclusion that the defendant poses a serious risk of flight.  The nature and circumstances of the charged crimes—securities fraud conspiracy, wire fraud conspiracy, and money laundering conspiracy—are extremely serious.  Indeed, these crimes defrauded the defendant's victims of hundreds of millions of dollars.  And if convicted the defendant faces a potentially lengthy sentence.  The defendant faces up to 45 years' imprisonment if convicted on all three counts: the wire fraud and money laundering charges each a statutory maximum sentence of 20 years' imprisonment, and the defendant faces up to another five years for securities fraud conspiracy.  The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk.  See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

The defendant's history and characteristics, most notably his ties abroad, travel history, recent passport renewal, and access to digital assets from anywhere in the world, demonstrate that, if not detained, he presents a grave flight risk.  The defendant has frequently lived abroad, including, as a family member advised, in Africa from 2001-2003, Cuba from 2005-2007, Europe 2009-2011, and Asia 2012-2013 and traveled to many more, including the Maldives in 2021.  As noted above, the defendant has primarily stayed in the United Kingdom since March 2021, with his most recent stay in the United Kingdom lasting almost five months.  The defendant has not been in direct communication with his biological family since approximately the middle of 2022.  His ties to the United States have thus lessened over time and, indeed, he recently renewed a passport that was not set to expire until October 2029, raising the inference that he is seeking a later expiration date so that he may travel outside of the United States more regularly over the next ten years.  In addition, given the borderless nature of the Safemoon project, and blockchain projects more generally, the defendant does not need to remain in the United States to work on Safemoon or undertake another blockchain-related project.  The same principle applies to the defendant's access to digital assets.  He can access them from anywhere in the world and need not be in the United States.

The nature of the defendant's conduct as alleged in the indictment demonstrates that he also poses a danger to the community.  The defendant serially defrauded investors and then continually lied to them about his fraudulent conduct in his public statements over the course of more than a year.  He diverted tens of millions of dollars to enrich himself.  This is not a defendant who maintained lawful employment and committed the instant conduct on the side.  Rather, the defendant relied on these crimes alone to fund his lavish lifestyle.  If released, the Court can reasonably infer that he will commit other crimes to continue to fund his lifestyle, dissipating victim funds that might otherwise be available for restitution.

The evidence in this case is overwhelming.  The government expects to prove the defendant's guilt at trial beyond a reasonable doubt through witness testimony, including victim testimony, expert testimony and voluminous documentary evidence, including blockchain

5

analysis. The documentary evidence includes communications among the defendant and his co-conspirators regarding the charged schemes. Those communications include various admissions by the defendant and his co-conspirators, some of which are quoted in the indictment. The government's proof also includes extensive blockchain analysis evidencing the defendant's misappropriation of millions of dollars of worth of SFM, his laundering and exchange of the SFM into other digital assets and his ultimate liquidation of the assets and resulting use of fiat currency to fund the purchases cited above.

The defendant should be detained to ensure that he faces the charges against him in this case. Indeed, one of the defendant's co-defendants, Kyle Nagy fled the county on or about May 2023, shortly before the defendant began his most recent five-month stay in the United Kingdom. This defendant should not be allowed the opportunity to do the same.

## B.   Danger to the Community

Finally, the nature and circumstances of the defendant's offense strongly support detention. His intentional and brazen fraud, perpetrated over approximately fifteen months resulted in more than $300 million in losses to investor-victims. And when confronted with public statements questioning the legality of Safemoon's conduct, and specifically the misappropriation of assets from the liquidity pools that the defendant had told investors would be "locked," he doubled down on his fraud by lying to investors about what he was doing in public statements. These facts demonstrate that the defendant is a danger to the community. Were he to be released, he could participate in the dissipation of assets that would effectively prohibit victims from obtaining restitution in this case. Accordingly, the record demonstrates that a permanent order of detention should be issued to protect the community from the defendant's further criminal conduct while he awaits trial.

## IV.   Conclusion

For the reasons set forth above, the government respectfully requests that the defendant be held without bail pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   _____/s/_____

Drew G. Rolle
Matthew R. Galeotti
John O. Enright
Assistant U.S. Attorneys
(718) 254-7000