

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DGR/MRG/JOE                                   *271 Cadman Plaza East*
F. #2021R00923                                *Brooklyn, New York 11201*

November 8, 2023

By ECF

The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Braden John Karony et al.,
               Criminal Docket No. 23-433 (EK)

Dear Judge Komitee:[1]

        The government respectfully moves the Court for an order staying and revoking the November 8, 2023 release order entered by the Honorable Daphne A. Oberg, Magistrate Judge, District of Utah in the above-captioned matter.  United States v. John Karony, No. 23-MJ-1008 (DAO) (D. Utah), ECF No. 12.  Because Magistrate Judge Oberg has ordered the defendant released on November 9, 2023 at 4:00 p.m. EDT, the government respectfully requests that this Court enter an immediate stay of the release order pending resolution of the instant motion.  For the reasons set forth below, the release order entered by Magistrate Judge Oberg—which was entered without consideration of the defendant's substantial financial means and ability to flee— is insufficient to ensure the defendant's continued appearance and the safety of the community. Accordingly, the Court should vacate the release order and direct the U.S. Marshals Service to remove the defendant from the District of Utah to the Eastern District of New York in custody.

---

[1]      Having conferred with the Honorable Eric R. Komitee's chambers, the government understands that Judge Komitee will refer this bail appeal to the Miscellaneous Duty District Judge.

I.     Procedural History[2]

On October 31, 2023, a grand jury in the Eastern District of New York returned a three-count indictment charging defendants Braden John Karony, Kyle Nagy, and Thomas Smith with conspiracy to commit securities fraud (Count One); conspiracy to commit wire fraud (Count Two) and money laundering conspiracy (Count Three).  Indictment, ECF No. 1.  Arrest warrants for the defendants were issued the same day.  The charges relate to a ranging and complex scheme to defraud investors in a crypto token called SafeMoon ("SFM"), which token was issued by the defendants and their company SafeMoon US LLC.  Through their scheme, the defendants fraudulently accessed and misappropriated tens of millions in digital assets for their personal benefit, and thereafter used those assets to purchase luxury vehicles, homes and to make personal investments.  Among the assets purchased by the defendant using criminal proceeds was a personal home in Provo, Utah valued at over $1 million.

On October 31, 2023, law enforcement agents arrested Karony at Salt Lake City International Airport.  Karony had returned to the United States on October 27, 2023 after being abroad for approximately five months.  Following Karony's arrest, his initial appearance was scheduled for Friday, November 3, in the District of Utah.  On November 3, Karony was presented to the Honorable Daphne A. Oberg, United States Magistrate Judge, District of Utah, for a removal hearing pursuant to Rule 5 of the Federal Rules of Criminal Procedure.   At that time, pursuant to local practice in the District of Utah, Magistrate Judge Oberg considered the question of Karony's pre-trial detention, and granted the government's motion for a detention hearing, which was scheduled for November 8, 2023.  A temporary order of detention was entered through that date.  On November 8, 2023, the government filed a letter addressed to this Court (the "Detention Letter"), outlining the bases for the defendant's pre-trial detention and removal in custody to the Eastern District of New York.  Letter dated Nov. 8, 2023, ECF No. 11.

On November 8, 2023, District of Utah Pre-Trial Services issued a report that, among other things, addressed the defendant's representations concerning his personal history and finances.  D. Utah PTS Report.  As reported to D. Utah Pre-Trial Services, the defendant "has resided in his penthouse condominium in Miami, Florida, since February 2023," but that "much of the time  . . he has been in England with his girlfriend."  Id. at 2.  The defendant stated that he had lived with his girlfriend "for the past two years" and that she "resides in England."  Id. The defendant admitted to owning "several other properties, but on advice of counsel chose not to discuss the particulars," except mentioning "a home in Kansas City."  Id.  The defendant reported his only employment as CEO of SafeMoon LLC, but he did not disclose his annual salary "on advice of counsel."  Id.  No other financial information was provided by the defendant, with D. Utah Pre-Trial Services noting "On the advice of counsel, the defendant's finances were not discussed."  Id. at 3.  Ultimately, D. Utah Pre-Trial Services expressed concern regarding the defendant's risk of non-appearance but recommended that the risks could be mitigated "with strict reporting, to include GPS monitoring, home detention" and other conditions.  Id. at 4.

---

[2] On November 8, 2023, the government filed a detention letter setting out in detail the factual background underlying the Indictment and multiple bases for defendant Karony's detention.  ECF No. 11.  That letter is incorporated herein by reference.

On November 8, 2023, Magistrate Judge Oberg held the detention hearing and issued an order releasing the defendant on an unsecured $500,000 bond, with no sureties, and the following special conditions:

- Home detention at the defendant's Miami apartment.
- No access to crypto currency or digital currency asset exchange or trading platforms.
- Cannot use or possess any digital currency, wallets, digital assets, or digital tokens.
- Must not engage in the purchase or sale of any digital currency.
- Must not transfer any convertible virtual currency or direct others to do so on his behalf.
- Shall not engage in any investment promotional activities.
- Must disclose all financial accounts to pretrial services.

At the government's request, Magistrate Judge Oberg stayed her release order until 4:00 pm ET (2:00 pm MT) on November 9, 2023, to permit the filing of the instant appeal.

II.    Jurisdiction

The procedures for reviewing a release order are set out in Title 18 United States Code Section 3145.  That section provides that if a person is released by a magistrate judge in another district, "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release.  The motion shall be determined promptly."  18 U.S.C. § 3145.

In United States v. El Edwy, the Second Circuit has explained that "for purposes of 18 U.S.C. § 3145, 'the court having original jurisdiction over the offense' means the court in the district in which the prosecution is pending, not the court in which the magistrate judge sits." United States v. El Edwy, 272 F.3d 149, 154 (2d Cir. 2001).  Applying that principle, the court explained:

> [I]f the magistrate judge has ordered conditional release to ensure
> the defendant's appearance in the district where the prosecution is
> pending, and the government believes that the conditions of release
> imposed will not ensure the defendant's appearance . . .  and the
> safety of any other person and the community, the attorney for the
> Government may file, with the court having original jurisdiction
> over the offense [the district in which the prosecution of the offense
> is pending], a motion for revocation of the order or amendment of
> the conditions of release.

Id. at 153 (alterations in original and internal quotation marks and citations omitted).  See also United States v. Harrison, 396 F.3d 1280, 1281 (2d Cir. 2005) ("A magistrate judge's ruling on a § 3145 motion . . . is not 'final' for purposes of § 1291 because it is subject to review by the district court judge overseeing the case.").

Here, because the defendant has been indicted by a grand jury in the Eastern District of New York, this Court is the court "having original jurisdiction over the offense" and has jurisdiction to hear the instant motion to revoke the release order entered by the Magistrate Judge in the District of Utah.

III.   Applicable Law

A.   Standard of Review

A review of a magistrate judge's order of release is de novo.  See United States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985) ("[A] district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion."). In reaching its own independent conclusion, the arresting district's determinations are entitled to little weight.  United States v. Savader, 944 F. Supp. 2d 209, 213 (E.D.N.Y. 2013) ("[F]ar less weight should be accorded to determinations rendered in the district of arrest").  As the Second Circuit has explained, "[T]he district of prosecution will have better access to other information that is pertinent to release or detention under § 3142(g), such as the nature and circumstances of the offense, and the weight of evidence against the defendant."  El Edwy, 272 F.3d at 154.

B.   The Bail Reform Act

The Bail Reform Act empowers federal courts to order a defendant's detention pending trial where the government establishes by clear and convincing evidence that the defendant is a danger to the community or, by a preponderance of the evidence, that he represents a risk of flight.  See 18 U.S.C. § 3142(e); United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).  The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

Facts supporting a detention order include a defendant's "alleged deceptive actions, access to substantial financial resources, frequent international travel, complete lack of ties to the United States, and extensive ties to foreign countries without extradition." United States v. Boustani, 356 F. Supp. 3d 246, 255 (E.D.N.Y. 2019), aff'd United States v. Boustani, 932 F.3d 79, 83 (2d Cir. 2019); see also United States v. Zarrab, No. 15 CR 867 (RMB), 2016 WL 3681423, at *8 (S.D.N.Y. June 16, 2016) (entering detention order highlighting defendant's "lack of ties to the United States; his significant wealth and his substantial resources; his extensive international travel; and his strong ties to foreign countries, including countries without extradition").

In detention proceedings, evidentiary rules do not apply, and the government is permitted to proceed by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to

proceed by proffer in detention hearings); Ferranti, 66 F.3d at 542 (same); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same). As the Second Circuit has explained: "[I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers." See LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131. Indeed, Section 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.; United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

IV.    Argument

        For the reasons set forth below and in the government's Detention Letter, this Court should assess the relevant factors under the Bail Reform Act de novo, vacate the prior release order from the District of Utah, and enter an order of detention requiring Karony's transport to this District in custody. As set out in detail in the Detention Letter, the defendant poses serious risks of flight and continued danger to the community should he be released. These concerns all stem from the vast and wide-ranging nature of this complex, and borderless, international fraud scheme; the defendant's central role in leading that scheme; and the defendant's strong and enduring ties abroad.

        As set out in detail in the Detention Letter, each factor under the Bail Reform Act supports the defendant's pre-trial detention in this case. A number of important factors were overlooked by the Magistrate Judge in granting the defendant's release on a $500,000 unsecured bond and are highlighted here. As an initial matter, the defendant's substantial assets were entirely overlooked by the court in Utah in part because the defendant provided D. Utah Pre-Trial Services, and the Court, with almost no information concerning his finances.

        The evidence obtained by the government paints the clear picture of a person with substantial wealth: As alleged, the defendant owns a Utah home currently being sold for $1.5 million. The defendant told Pre-Trial Services he owned multiple other properties, but he declined to identify them. At the time of his arrest, the defendant was in possession of multiple Rolex watches, including one the defendant stated was worth more than $60,000, a gold Cartier ring, $359, GBP295, four credit cards, three cell phones, and keys for a Tesla. After the defendant's arrest, the government received a letter from lawyers for a court-appointed receiver of a Utah company owned by the defendant's relatives ("Company-1") that is in receivership. Company-1's receiver informed the government that in 2021, the defendant had contributed $5 million for a membership interest in Company-1. Company-1's receiver further informed the government that between April 2023 and October 2023, the defendant wired more than $800,000 to fund the receivership. As these facts make clear, the defendant has access to substantial assets totaling millions of dollars. None of this was disclosed by the defendant or assessed by the court in Utah before releasing the defendant on a $500,000 unsecured bond.

        When viewed together with the defendant's substantial and ever-expanding ties abroad, the strength of the government's case, and the substantial punishment the defendant faces if convicted, there are no conditions or combination of conditions that would ensure the defendant's continued appearance or mitigate the risk he poses to the community. As set out in

the Detention Memo, although the defendant is a U.S. citizen, his ties to the United States are weak and he has shown a desire to remain abroad—and outside the jurisdiction of the United States—since he began work with SafeMoon.  Since in or about April 2021 to in or about June 2023, the defendant took twelve trips from the United States to Europe, many trips for multiple weeks.  Until his return to the U.S. on October 27, 2023, the defendant had been abroad for five consecutive months. Even then, his time in the U.S. was scheduled for a matter of weeks.  As he reported to D. Utah Pre-Trial Services, he resides with his fiancée a U.K. citizen and resident. He is in the process of selling the Utah home he purchased and has operated SafeMoon from abroad since soon after its inception in March 2021. The facts are consistent with someone who has shown an intent and ability to remain outside of the United States.

Central to the criminal charges are the defendant's repeated lies to investors in SFM, all made while holding himself out as the CEO of SafeMoon and causing hundreds of millions in losses to SFM investors.  The government's proof of these charges is strong; relying on victim testimony, communications among the conspirators obtained pursuant to search warrants, business records, crypto asset tracing, and crypto trading records for accounts personally accessed and controlled by the defendant during the scheme.  If convicted, the defendant faces a statutory maximum of 45 years' imprisonment.  These facts all provide powerful incentives for the defendant to leverage his substantial (and opaque) financial assets and foreign ties to avoid that outcome.

Accordingly, for the reasons set out above, and in the Detention Letter, the government respectfully requests that the Court (1) immediately stay the November 8, 2023 release order pending resolution of this motion; and (2) enter an order revoking the November 8, 2023 release order in its entirety, detaining the defendant pending trial, and directing the U.S. Marshals Service to remove the defendant to the Eastern District of New York in custody.

Respectfully submitted,

BREON PEACE
United States Attorney

By:      /s/
Drew G. Rolle
Matthew R. Galeotti
John O. Enright
Assistant U.S. Attorneys
(718) 254-7000

cc:      All Counsel of Record (by ECF)