# Petrillo Klein + Boxer

655 Third Avenue, 22nd Fl.
New York, NY 10017

T: 212.370.0330
www.pkbllp.com

**ADAM SCHUMAN**
aschuman@pkbllp.com
D: 212.370.0390
M: 917.574.0883

December 4, 2023

**By ECF**

The Hon. James R. Cho
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Application for Bail Pending Trial*
                *United States v. Karony et al.,*
                *23-CR-433 (EK)*

Dear Judge Cho,

      On behalf of our client, Braden John Karony, we write to respectfully request that Your Honor conduct a hearing to consider proposed conditions for the release of Mr. Karony on bail pending trial pursuant to 18 U.S.C. § 3142. As described below, the Honorable Eric Komitee directed that this hearing be conducted by the magistrate judge on duty.

      A hearing is necessary because, like his codefendant Thomas Smith already granted pretrial release, Mr. Karony is not a danger to the community and a combination of conditions would reasonably insure his appearance for trial and otherwise. *See* 18 U.S.C. § 3142(c).

      Mr. Karony was arrested at the Salt Lake City International Airport on October 31, 2023, and has been detained since his arrest in the Salt Lake County Metro Jail. In advance of a detention hearing in U.S. District Court in the District of Utah on November 8, 2023, Pretrial Services issued a report concluding that concerns regarding the risk of Mr. Karony's non-appearance could be mitigated. At the subsequent detention hearing, Magistrate Judge Daphne A. Oberg released Mr. Karony on the condition that he execute a $500,000 bond and comply with certain additional conditions discussed in further detail below. Notwithstanding Magistrate Judge Oberg's release Order, Mr. Karony remained detained in Utah while the Government sought the Order's review and revocation. Pursuant to the Government's request, Judge Komitee conducted a bail hearing telephonically on November 13, 2023, and ordered that Mr. Karony remain in custody and be transported to the Eastern District of New York, but indicated that the conditions for Mr. Karony's pretrial release could be revisited.

# Petrillo Klein + Boxer

Mr. Karony presently remains incarcerated in Utah. By letter dated November 22, 2023, we requested that a new bail package be considered by the Court in support of our request that Mr. Karony be released from custody. On November 28, 2023, Judge Komitee "directed [Mr. Karony] to present the 'new bail package' referred to in that letter to a magistrate judge on duty in the first instance." ECF Notice, Nov. 28, 2023.

As set forth below, we respectfully submit that conditions of pretrial release can be set for Mr. Karony that will "reasonably assure" his appearance. 18 U.S.C. § 3142(e)(1).

**Procedural History**

On October 31, 2023, a grand jury sitting in the Eastern District of New York returned a three-count indictment charging Mr. Karony and his co-defendants, Kyle Nagy and Thomas Smith, with securities fraud conspiracy, wire fraud conspiracy, and money laundering conspiracy. Indictment ("Ind."), ECF No. 1. The charges concern alleged misconduct in relation to "SafeMoon Token" ("SFM"), a digital asset alleged to have been issued in or about March 2021 by SafeMoon US LLC ("SafeMoon"), a Utah limited liability company. Ind. ¶¶ 1-2. The Indictment states that Mr. Karony "worked for SafeMoon and, at various times, held himself out as the [Company's] 'Chief Executive Officer[.]'"[1] Ind. ¶ 2.

Following the return of the indictment on October 31, arrest warrants for the defendants were issued the same day, and Mr. Karony was arrested that evening at Salt Lake City International Airport following his arrival on a flight from Miami, Florida.

The Utah Release Order. On November 3, 2023, Mr. Karony's initial appearance was held before the Hon. Daphne A. Oberg, United States Magistrate Judge, District of Utah. Upon the Government's motion, Magistrate Judge Oberg scheduled a detention hearing for November 8, 2023, and entered a temporary order of detention through that date.

On November 8, 2023, in advance of the detention hearing, the Government filed a letter seeking Mr. Karony's detention pending trial, arguing that he posed a risk of flight, "most notably [due to] his ties abroad, travel history, recent passport renewal, and access to digital assets from anywhere in the world," ECF No. 11 at 5, and that his alleged "doubl[ing] down on his fraud by lying to investors" in public statements demonstrated that he "is a danger to the community" who could "participate in the dissipation of assets" if released. *Id.* at 6.

The same day, District of Utah Pre-Trial Services issued a report concluding that concerns regarding the risk of Mr. Karony's non-appearance could be mitigated "with strict reporting, to

---

[1] Nagy and Smith are also alleged to have been employed by SafeMoon; Nagy is alleged to have served as the developer of the SFM digital asset, and Smith is alleged to have held himself out as SafeMoon's Chief Technology Officer. Ind. ¶¶ 3-4.

include GPS monitoring, home detention" and other conditions. *See* ECF No. 12 (quoting D. Utah PTS Report). Mr. Karony's passport was given to the FBI at the time of his arrest on October 31, 2023.

At the detention hearing held on November 8, 2023, consistent with the recommendation of Pre-Trial Services, Magistrate Judge Oberg ordered Mr. Karony's release on an unsecured $500,000 bond with special conditions, including home detention at Mr. Karony's rental apartment in Miami, Florida, and no access to digital assets. The conditions set by Magistrate Judge Oberg followed Magistrate Judge Bloom's Order of November 3, 2023, releasing co-defendant Smith on conditions including a $500,000 bond, co-signed by three persons and secured by one property. *See* ECF No. 9.

At the Government's request, Magistrate Judge Oberg stayed her release Order to permit the Government to seek its review pursuant to 18 U.S.C. § 3145.

<u>The Eastern District of New York Detention Hearing</u>. On November 8, 2023, the Government filed a motion to "stay[] and revok[e]" Magistrate Judge Oberg's release order issued the same day. *See* ECF No. 12. On November 9, 2023, following a telephonic bail application hearing not attended by Mr. Karony,[2] the Hon. LaShann DeArcy Hall granted the Government's motion to stay the release Order pending resolution of the government making a motion for revocation of that Order.

On November 13, 2023, a telephonic bail application hearing was held before Judge Komitee. At the conclusion of the hearing, following discussion of the terms of the District of Utah release Order and the relevant circumstances, Judge Komitee stated that he was not prepared to affirm the release Order pursuant to the conditions proposed therein, but indicated his willingness to further consider granting the requested release should Mr. Karony be able to present a stronger bail package, such as one including co-signers.

On November 22, 2023, Mr. Karony, who is still awaiting removal from the District of Utah to this District, moved this Court for (1) release from custody in accordance with the bail conditions set forth in the District of Utah release Order and a subsequent bail hearing in the Eastern District of New York to determine whether any additional pretrial release conditions are warranted; or, in the alternative, (2) a renewed bail hearing to be held at the Court's earliest convenience to permit us to submit a new bail package secured by financially responsible co-signers. *See* ECF No. 21.

---

[2] We understand that Mr. Karony, who remained in custody in the District of Utah at the time of the November 9 hearing, was not provided with an opportunity to join the hearing telephonically.

On November 28, 2023, the Court acknowledged receipt of Mr. Karony's letter motion of November 22, and directed that Mr. Karony present the new bail package referenced therein to a magistrate judge on duty in the first instance. *See* ECF Notice, Nov. 28, 2023.

## **Argument**

In the prior proceedings in Utah and in the Eastern District of New York, the Government primarily argued for Mr. Karony's detention based on risk of flight. We respectfully submit that the Government has overstated that risk and conditions can be imposed to reasonably assure Mr. Karony's appearance through trial.

First, Mr. Karony is a U.S. citizen and served in the U.S. military for six years, including an approximately six-month combat deployment to Afghanistan. He was granted top-secret security clearances from the U.S. government and has no criminal record. The Government has pointed out that Mr. Karony has spent time in the United Kingdom, but this is not probative of a risk of flight. Mr. Karony is a Florida resident and has a fiancée who is a U.K. citizen and has lived in the U.K. After spending time with his fiancée in the U.K., Mr. Karony has always returned to the United States, including after being interviewed at length about SafeMoon by the FBI in late 2021, outside the presence of counsel.[3] Magistrate Judge Oberg found Mr. Karony's repeated return to the United States after traveling abroad to be "significant" and "compelling" and, accordingly, found the U.K. travel not to reflect a risk of flight. Mr. Karony comes from a family with a long history of serving in the United States armed forces, and his strong ties to the United States are personal and extend across generations.

Second, Mr. Karony's application for a new U.S. passport – before his existing passport expired, and before his arrest in this case – was cited by the Government as evidence that Mr. Karony posed a risk of flight but, in fact, is innocuous and does not create a flight risk. Mr. Karony's passport had been damaged, thereby requiring its replacement. Someone seeking to evade United States jurisdiction might falsely claim that they lost a passport, so that they might surrender one and hold the other passport, to abscond; Mr. Karony's effort to replace a damaged passport with a new one – his old, damaged passport was tendered by Mr. Karony and returned to him hole-punched and unable to be used – is susceptible to no dishonest interpretation.

Third, Mr. Karony has longstanding ties in Utah and Florida. If pretrial release is permitted, Mr. Karony proposes to live in an apartment which he already rents in Miami, Florida. Mr. Karony's fiancée from the U.K. will join him there for substantial periods of time. As discussed further below, home confinement is part of the proposed bail conditions, including GPS

---

[3] Indeed, the timeline of the investigation itself undercuts the Government's position that Mr. Karony is a flight risk. The FBI's interview occurred in November 2021, a few months after the last "Overt Act" alleged in the Indictment, *see* Ind. ¶ 62(v)), yet Mr. Karony continued to travel abroad and return to the United States multiple times for two years before the Government brought charges.

monitoring. In addition, from home, Mr. Karony can be fully available to assist SafeMoon – which has some 60 employees and currently is being led by an independent restructuring officer – and provide input and information that will help it to identify assets and sustain key business relationships. We have been informed by the restructuring officer that ready access to Mr. Karony would benefit SafeMoon in assessing the status of company products under development, relationships with vendors supporting products, and the company's intellectual property.

Fourth, Mr. Karony's ongoing detention in Utah since his arrest on October 31, 2023, and the Government's failure to transport him to the Eastern District of New York since Judge Komitee's Order of November 13, 2023, has prejudiced Mr. Karony's ability to consult with counsel regarding his defense. The undersigned has had limited calls with Mr. Karony, due to restrictions on the number and length of calls that Mr. Karony can conduct while in custody. Calls with counsel are monitored, which precludes candid attorney-client communications. And the Government has represented that discovery in this case will include hundreds of thousands of documents, "if not millions"; accordingly, Mr. Karony's ability to review discovery and prepare his defense will be substantially prejudiced if he is not released on bail.

Fifth, insofar as the Government contends that Mr. Karony is potentially a danger to the community because he could participate in the dissipation of assets, we submit that the Government cannot satisfy its burden of showing such danger by clear and convincing evidence. The bail statute does not provide a *de facto* presumption of detention for any of the three conspiracy charges alleged in the case or for cryptocurrency charges generally. As mentioned, a restructuring officer is in place at SafeMoon, overseeing its assets and operations. The proposed conditions below can reasonably restrict Mr. Karony's access to digital assets and address any purported "dangerousness" concern of the Government.

In sum, we respectfully submit that suitable restrictions can address the Government's stated concerns. Insofar as Judge Komitee found that Magistrate Judge Oberg's release order was insufficient, Mr. Karony proposes more restrictive conditions below.

**Proposed Special Conditions and Sureties**

Similar with the conditions of pretrial release set by Magistrate Judge Bloom for co-defendant Smith, we propose that Mr. Karony be released from custody on the following conditions to be implemented at the time of his release or, where applicable, shortly or on an ongoing basis thereafter:

- Executing a $500,000 bond
    i. Co-signed by Mr. Karony's parents (described further below)
    ii. Secured by a Kansas City residential property owned by Mr. Karony (indirectly by a wholly-owned LLC) that is currently leased
- Home detention in Miami
- GPS monitoring

- No access to digital assets or wallets or to digital asset exchanges
- No engagement in the purchase or sale of digital assets
- No engagement in investment promotional activities
- Cooperation with SafeMoon's restructuring officer
- Other standard provisions, such as no passport and no firearms

In addition, we would be pleased to coordinate with the Government on mechanisms that will provide reasonable assurance that Mr. Karony is complying with the conditions upon his release. For example, Mr. Karony's access to electronic devices can be monitored, and the Government can propose suitable monitoring software.

As to the proposed co-signers, Mr. Karony has been in regular contact with his parents since his arrest, including via in-person visits at the Utah facility where he is currently detained. Bradford Karony, Mr. Karony's father, is a U.S. Marine Corps veteran and a retired Central Intelligence Agency officer. Due to his employment as a government contractor, he currently resides primarily in Fairfax, Virginia. Jennifer Karony, Mr. Karony's mother, resides in the family's home in North Salt Lake, Utah, with several of Mr. Karony's siblings. She is a 50% partner in Barajally Group Ltd., an internet service provider in The Gambia.

As to the Kansas City property, we anticipate that the Government will contend that Mr. Karony might have used assets obtained in connection with SafeMoon for the purchase of the property, given its prior arguments. This contention should not be given undue weight, where the allegations in the Indictment have not been proven and the Government has taken no steps to seize or allege the specific forfeiture of the Kansas City property as direct criminal proceeds. Indeed, the Kansas City property is not mentioned in the Indictment. In fact, the voluntary restraint of the Kansas City property assures that it will maintain its current ownership structure if this criminal case does ultimately result in a forfeiture judgment against Mr. Karony.

Last, SafeMoon employs some 60 people, and the company's continuing viability will be enhanced if Mr. Karony is granted bail and allowed to assist its independent restructuring officer. Accordingly, while Mr. Karony's own ability to consult with counsel and prepare his defense is being prejudiced by his continued detention, Mr. Karony's inaccessibility also is causing harm – in the form of diminishing assets, lost business opportunities, and potentially jobs – that extend beyond him to others who are not implicated in the charges made by the Government.

\* \* \*

Because the Government has not complied with Judge Komitee's direction that Mr. Karony be transported from Utah to the Eastern District of New York, we respectfully request that the Court set a date for a telephonic detention hearing for consideration of Mr. Karony's proposed bail

package, and that the Government be directed to arrange for Mr. Karony's participation by phone from Utah.

Sincerely,

Adam H. Schuman
Caelyn Stephens
PETRILLO KLEIN & BOXER LLP

*Counsel for Braden John Karony*