

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

DGR/MRG/JOE
F. #2021R00923

December 6, 2023

By ECF

The Honorable James R. Cho
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  United States v. Braden John Karony et al.
     Criminal Docket No. 23-433 (EK)

Dear Judge Cho:

The government respectfully writes in response to defendant Braden John Karony's December 4, 2023 renewed bail motion. (See ECF No. 28 (the "Def. Mot.")). For the reasons that follow, the defendant's motion should be denied.

I.  Background and Procedural History[1]

On October 31, 2023, a grand jury in this District returned a three-count indictment charging the defendant and two co-defendants with one count of securities fraud conspiracy in violation of 15 U.S.C. §§ 78j and 78ff and 18 U.S.C. § 371; one count of wire fraud conspiracy in violation of 18 U.S.C. §§ 1343 and 1349; and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) for their roles in a series of fraudulent schemes concerning the digital-asset issuer SafeMoon US LLC. The defendant was arrested that night at Salt Lake City international airport. On November 3, 2023, the Honorable Daphne A. Oberg, Magistrate Judge, District of Utah, found that the "threshold was met for a detention hearing," and set the hearing for November 8, 2023. (See United States v. Karony, 23-mj-01008 (D. Utah) (ECF No. 5)). On November 8, 2023, the court ordered the defendant to be released pending trial ("Release Order").

---

[1]  The government incorporates by reference its November 8, 2023 detention memo, including its recitation of the offense conduct, the instant indictment, and the defendant's arrest.

The government promptly moved to stay and revoke the Release Order. (ECF Nos. 11-12). On November 9, 2013, the Honorable LaShann DeArcy Hall, United States District Judge, ordered a stay of the Release Order. (ECF No. 13). On November 13, 2023, after oral argument, Judge Komitee vacated the Release Order and ordered the defendant to be removed to this District in the custody of the U.S. Marshals Service. (ECF No. 19.) The defendant now seeks his pre-trial release claiming that he is neither a risk of flight nor a danger to the community. (Def. Mot. at 4-5). Because the defendant has not offered a bail package that addresses Judge Komitee's well-founded concerns about his risk of flight and for the reasons set forth below, the Court should deny the defendant's motion.

In vacating the Release Order, Judge Komitee stated, with respect to the defendant:

> it seems utterly clear, [the defendant is] a person with access to substantial amounts of money based on the Government's proffer. We're talking about money that it would be potentially easy for the defendant to access, but hard for the Government to trace or track. And we don't have any of the moral suasion that would be associated with meaningful security posted by solvent sureties who have the kind of relationship with the defendant that would bring the moral suasion that I think we all would want to see.

(Nov. 13, 2023 Hrg. Tr. at 22:25-23:8). Renewing his motion for bail, the defendant puts forth a new bail package nearly identical to that presented to Judge Komitee, but with the proposal of his parents as sureties. For the reasons set forth herein, the defendant's bail package fails to address the concerns identified by Judge Komitee when the Court denied him bail in November and this package is insufficient to ensure his appearance in the Eastern District of New York. Among other things, his proposed suretors do not have the kind of relationship with the defendant that offers the moral suasion necessary to dissuade the defendant from fleeing.

II. <u>Argument</u>

    A. <u>The Defendant Has Not Shown That He Is Not a Risk of Flight</u>

As set forth in the government's November 8, 2023 detention letter (<u>see</u> ECF No. 11 at 3), the defendant has primarily resided in the United Kingdom since SafeMoon's launch in March 2021. He is engaged to marry a citizen of the United Kingdom and plans to get married there. (<u>Id.</u>). The defendant has not and cannot dispute these facts. Instead, he claims that his return to the United States, particularly after being interviewed by the FBI in late 2021, establishes that he is not a risk of flight. (Def. Mot. at 4). But that assertion is undermined by the fact that the defendant told others, after his interview with the FBI, that the FBI was closing its investigation. This is reflected in the following November 4, 2021 electronic message exchange between the defendant and his co-defendant Thomas Smith:

    SMITH:      How goes NYC?
    KARONY:   It goes well dude. May have a few items for yuh to work on
    SMITH:      Baller lmk

| | | |
|---|---|---|
| KARONY: | FBI stuff went really well.  The matter is now closed. | |
| SMITH: | HYYYYPE | |

[***]

| | |
|---|---|
| SMITH: | Bittersweet in that the fbi is a nothing burger now.  Feeling good there at least |

Although the defendant has repeatedly argued for bail claiming that he freely travelled to the United States while under investigation, his own statements make clear that he did not believe that to be true.  In the defendant's view, there was no reason not to return to the United States because he was under the mistaken belief that the government's investigation had been closed.  The defendant is now in a materially different posture.  He is under indictment and faces charges that, together, expose him to up to 45 years in prison if convicted, and likely tens of millions of dollars in potential forfeiture and restitution.  The defendant's incentive to flee is great.

The defendant also claims that he has longstanding ties in Utah and Florida, that his pre-trial detention has prejudiced his ability to consult with counsel, and that he is not a danger to the community because a restructuring officer at SafeMoon overseeing the company's assets and operations and proposed conditions would preclude him from dissipating assets.[2]  In fact, the defendant's ties to Florida and Utah have diminished materially over the last two years during which he primarily resided in the U.K. and became engaged to a U.K. citizen.  As for the defendant's purported inability to adequately consult with counsel, the government notes that detained defendants in this District regularly consult with their counsel to, among other things, prepare for trial.  The defendant's position is no different from every defendant in custody in the Bureau of Prisons and does not provide a basis for release.

Finally, the defendant's claim that he is not a danger to the community who could dissipate assets in light of SafeMoon's restructuring officer and other proposed pre-trial conditions is also inadequate.  As alleged, SafeMoon was an enterprise used by the defendant as a vehicle to commit fraud and enrich himself and his co-conspirators.  Any involvement with SafeMoon, even if guided by a purported restructuring officer, could lead to further harm.  And as for the dissipation of personally held assets, the defendant could easily evade his proposed conditions of release by having others access digital wallets maintained outside the U.S. and around the world on his behalf and at his direction.

      B.      <u>The Defendant's Proposed Bail Package Is Wholly Inadequate</u>

Even if the Court agreed that the defendant could be released from custody subject to a bail package with certain pretrial conditions, the defendant's proposed suretors,

---

[2]      As he did with Judge Komitee, the defendant again argues that his application for a new U.S. passport does not evidence a risk of flight because he was only seeking to replace a damaged passport.  (Def. Mot. at 4).  Given the defendant's failure to proffer the kind of damage to his prior passport that necessitated a replacement passport, the government is unable to adequately respond to this assertion.

3

collateral, and bond are wholly inadequate to ensure the defendant's continued appearance for the reasons that follow.

First, the defendant's proposed suretors—his mother Jennifer Karony and his father Bradford Karony—are both fact witnesses in this case.[3] In or about October 2022, Jennifer Karony contacted the Federal Bureau of Investigation ("FBI") and began providing information about the defendant and his SafeMoon-related conduct, some of which Ms. Karony described to the FBI as criminal. Since that time, she has provided information and documents related to SafeMoon and the defendant's conduct, and expressed concerns that SafeMoon was a fraudulent enterprise and that the defendant had misappropriated millions of dollars of investor monies. Ms. Karony continued to provide information to the FBI voluntarily up through the time of his arrest.[4]

Second, the government is aware that prior to the defendant's arrest, both proposed sureties were effectively estranged from the defendant, having not spoken to him for approximately 19 to 20 months. During that time, the defendant and certain entities he controlled sued his mother, Ms. Karony, an entity they jointly controlled called Emanation Communications Group, LC ("ECG") and others in Utah state court in August 2022, alleging breach of contract, fraud, conversion, and unjust enrichment in connection with the operation of ECG.[5] The defendant alleged that he had funded ECG with $5 million but that Jennifer Karony, his mother, had, among other things, misused the $5 million capital contribution for her own non-ECG purposes. An individual who the defendant has sued and has been actively litigating against for more than a year surely cannot have the moral suasion over the defendant that Judge Komitee sought and the law requires.

Third, in addition to the $5 million the defendant used to capitalize ECG, he has sent significant additional monies (both fiat and digital assets) to both Jennifer and Bradford Karony during the relevant time period, which transfers are consistent with the pattern of transactions used in furtherance of the misappropriation of investor monies and laundering alleged in the Indictment. For example, Jennifer Karony maintains multiple accounts, including an account in her name, at a Utah-based bank at which the defendant also maintains multiple accounts. The defendant, Jennifer Karony and Bradford Karony also maintain accounts at the same domestic digital-asset exchange (with all of their accounts opened within weeks of each other). Records received from the Utah-based bank show internal transfers from accounts controlled by the defendant to accounts controlled by Jennifer Karony. Those records also show monies sent to accounts controlled by the defendant from the digital-asset exchange where he and his parents maintain accounts. In addition, records received from the domestic digital-asset

---

[3] Prior to the November 13, 2023, telephonic conference that took place before Judge Komitee, Bradford Karony publicly stated on the public line, in sum and substance, that he was appearing as a spokesperson for the family against the defendant Braden John Karony.

[4] This is a summary of information provided by Ms. Karony, which may be supplemented at a later date. This summary is provided for the limited purpose of assisting the Court in assessing Ms. Karony's suitability as a surety.

[5] The government understands that, in light of this prosecution, the parties have recently decided to settle this action.

4

exchange show Bradford Karony receiving at least $1 million in digital assets from digital wallet addresses the government believes are controlled by the defendant. These facts suggest that the proposed suretors may be indebted to the defendant, a fact that makes them ineligible to serve as his suretors.

Moreover, given the defendant's effective estrangement from his family prior to his recent arrest, the defendant could in fact be incented to flee and leave his proposed suretors with the burden of paying the government the amount of any bond. For these reasons, the government submits that neither Jennifer Karony nor Bradford Karony has the requisite moral suasion over the defendant, an individual to whom they are arguably indebted for millions of dollars. See United States v. Hill, 97 F. Appx 350, 352 (2d Cir. 2004) (affirming district court's denial of bail application and holding that defendant's mother-proposed suretor's "willing[ness] to stand as her son's suretor may have evidenced strong maternal devotion, but the record fails to evidence the sort of filial respect necessary to support an inference that Hill would appear for court and conform his conduct to the law rather than jeopardize his mother's home and assets").

In addition, the defendant's proposal to set a bond amount at $500,000 and to secure the bond with a Kansas City residential property is similarly inadequate. The government's investigation has shown that the proffered Kansas City residential property owned by Mr. Karony, indirectly through a wholly-owned limited liability company, is inadequate to secure any bond. As the defendant previewed (Def. Mot. at 6), the defendant's purchase of the Kansas City property is entirely consistent with his other uses of misappropriated investor monies as alleged in the Indictment. The government's investigation of that property's acquisition continues, but records relating to that transaction indicate that it was acquired, at least in part, with proceeds traceable to the charged crimes. As for the $500,000 proposed bond amount, the defendant, as alleged, personally profited in the tens of millions of dollars.[6] Five hundred

---

[6] Were the Court to find a $500,000 proposed bond sufficient (which it should not), the government would request a Nebbia, or bail source hearing, pursuant to United States v. Nebbia, 357 F.2d 303 (2d Cir. 1966) (defendant must disclose the source of funds used to acquire the assets used to post bail and demonstrate those assets were obtained with legitimate funds to be released).

thousand dollars is thus inadequate to deter the defendant from violating his bail given his access to digital assets that far exceed that amount.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Drew G. Rolle
Matthew R. Galeotti
John O. Enright
Assistant U.S. Attorneys
(718) 254-7000

cc:    All Counsel of Record (by ECF)
       Clerk of Court (by ECF)