655 Third Avenue, 22ⁿᵈ Fl.
New York, NY 10017

T:  212.370.0330
www.pkbllp.com

# Petrillo Klein + Boxer

**ADAM SCHUMAN**
aschuman@pkbllp.com
D: 212.370.0390
M: 917.574.0883

February 6, 2024

**By ECF**

The Hon. Peggy Kuo
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> ***Re:    Application for Bail Pending Trial***
> ***United States v. Karony et al.,***
> ***23-CR-433 (EK)***

Dear Judge Kuo,

On behalf of our client, Braden John Karony, we respectfully request that Your Honor conduct a hearing to consider proposed conditions for the release of Mr. Karony on bail pending trial pursuant to 18 U.S.C. § 3142.   Mr. Karony has been detained since his arrest on October 31, 2023, initially in a local jail in Salt Lake City, Utah, and, since late December 2023, at the Metropolitan Detention Center ("MDC"), the conditions of which the Hon. Jesse Furman of the Southern District of New York recently described as an "ongoing tragedy."  *United States v. Chavez*, No. 22-CR-303 (JMF), 2024 WL 50233, at *2 (S.D.N.Y. Jan. 4, 2024).

At a previous bail hearing held before the Hon. James R. Cho on December 6, 2023, the Court denied with leave to renew a bail package proposing, among other conditions, a $500,000 bond to be co-signed by Mr. Karony's parents and secured by a residential property owned by Mr. Karony.  Pursuant to the Court's feedback that the proposed package could be strengthened by the inclusion of suitable additional suretors and collateral, Mr. Karony now proposes a revised bail package incorporating five additional co-signers and up to $1.2M in collateral.

We respectfully submit that bail should be granted because these additional sureties, in combination with additional conditions of pretrial release, including home detention, will "reasonably assure" Mr. Karony's appearance, and because, like his codefendant Thomas Smith already granted pretrial release, Mr. Karony is not a danger to the community.  18 U.S.C. § 3142(b).

# Petrillo Klein + Boxer

The Hon. Peggy Kuo
February 6, 2023
Page 2 of 7

**Procedural History**

On October 31, 2023, a grand jury sitting in the Eastern District of New York returned a three-count indictment charging Mr. Karony and his co-defendants, Kyle Nagy and Thomas Smith, with securities fraud conspiracy, wire fraud conspiracy, and money laundering conspiracy. Indictment ("Ind."), ECF No. 1.  The charges concern alleged misconduct in relation to "SafeMoon Token" ("SFM"), a digital asset alleged to have been issued in or about March 2021 by SafeMoon US LLC ("SafeMoon").  Ind. ¶¶ 1-2.  The Indictment states that Mr. Karony "worked for SafeMoon and, at various times, held himself out as the [Company's] 'Chief Executive Officer[.]'"[1]  Ind. ¶ 2.

Following the return of the indictment on October 31, Mr. Karony was arrested at the Salt Lake City International Airport on October 31, 2023, and was detained in the Salt Lake County Metro Jail pending removal to this District.

In advance of a detention hearing in U.S. District Court in the District of Utah on November 8, 2023, Pretrial Services issued a report concluding that concerns regarding the risk of Mr. Karony's non-appearance could be mitigated "with strict reporting, to include GPS monitoring, home detention" and other conditions.  At the subsequent detention hearing, the Hon. Daphne A. Oberg released Mr. Karony on the condition that he execute a $500,000 bond and comply with certain additional conditions.  The Government sought review of Magistrate Judge Oberg's Order, and at a telephonic bail hearing held on November 13, 2023, Judge Komitee ordered that Mr. Karony remain in custody and be transported to the Eastern District of New York but indicated that the conditions for Mr. Karony's pretrial release could be revisited.

By letter dated December 4, 2023, Mr. Karony proposed a new bail package incorporating conditions of pretrial release similar to those set by the Hon. Lois Bloom for co-defendant Smith, including a $500,000 bond to be co-signed by Mr. Karony's parents and secured by a residential property owned by Mr. Karony.  ECF No. 28.  The Government opposed the new bail package, arguing, *inter alia*, that the proposed suretors—Mr. Karony's parents, Bradford and Jennifer Karony—were inadequate on several grounds, *see* ECF No. 31 at 3–6, and that the property proposed as collateral "was acquired, at least in part, with proceeds traceable to the charged crimes."  ECF No. 31 at 5.

At a bail hearing held before Magistrate Judge Cho on December 6, 2023, the Court denied Mr. Karony's package as proposed but granted Mr. Karony leave to renew his application on the basis of a stronger proposed package.  The Court indicated that the proposed package could be strengthened by the inclusion of suitable additional suretors and collateral.

---

[1] Nagy and Smith are also alleged to have been employed by SafeMoon.

# Petrillo Klein + Boxer

The Hon. Peggy Kuo
February 6, 2023
Page 3 of 7

On or around December 23, 2023, nearly two months after his arrest, Mr. Karony was transported to this District, where he remains detained at the MDC.  On January 2, 2024, he was arraigned before the Hon. Taryn A. Merkl and entered a plea of not guilty on all counts.  In a report prepared in advance of his arraignment, Pretrial Services in this District recommended that Mr. Karony be released subject to a "substantial collateral bond, cosigned by financially responsible sureties," and certain other conditions, including home detention with location monitoring and travel restrictions, and computer monitoring.

At a status conference held on January 22, 2024, Judge Komitee directed that a bail hearing on any revised proposed bail package by Mr. Karony be held before a magistrate judge in this District.

## Proposed Special Conditions and Sureties

In a much more robust set of conditions of pretrial release than those set by Magistrate Judge Bloom for co-defendant Smith, Mr. Karony proposes that he be released from custody on the following conditions to be implemented at the time of his release or, where applicable, shortly or on an ongoing basis thereafter:

- Executing a $1,000,000 bond co-signed by seven relatives and friends and secured by $1.2M in assets held by several of proposed co-signers (described further below)
- Home detention in Miami
- GPS monitoring
- No access to digital assets or wallets or to digital asset exchanges
- No engagement in the purchase or sale of digital assets
- No engagement in investment promotional activities
- Other standard provisions, such as no passport and no firearms

In addition, Mr. Karony's access to electronic devices can be monitored, and the Government can propose suitable monitoring software in order to provide reasonable assurance that Mr. Karony is complying with the conditions of his release.

The proposed co-signers and collateral consist of:

- Bradford and Jennifer Karony: Mr. Karony's parents, with whom he has been in regular contact since his arrest.  Bradford Karony, Mr. Karony's father, is a U.S. Marine Corps veteran and a retired Central Intelligence Agency officer.  Due to his employment as a government contractor, he currently resides primarily in Fairfax, Virginia.  Jennifer Karony, Mr. Karony's mother, resides in the family's home in North Salt Lake, Utah, with several of Mr. Karony's siblings.  She is a 50% partner in Barajàlly Group Ltd., an internet service provider in The Gambia.  In addition to co-signing Mr. Karony's bond, Mr. and Ms. Karony are willing to post as collateral both (i) a home they own in Chantilly, VA, in which they have approximately

# Petrillo Klein + Boxer

The Hon. Peggy Kuo
February 6, 2023
Page 4 of 7

$150,000 in equity, and (ii) a 401(k) retirement account holding approximately $100,000 in assets.

- Co-Signer 3: A self-employed car dealership owner residing in Utah. This individual, a friend of Mr. Karony, is willing to post as collateral up to $250,000 of equity in his home.

- Co-Signer 4: A self-employed owner of a manufacturing company residing in the United Kingdom. This individual, a family friend of Mr. Karony and his fiancée, is willing to post as collateral up to $700,000 of equity in his home.

- Co-Signers 5 and 6: A media producer at a health sciences company (Co-Signer 5), and his wife, a full-time student at a Utah university (Co-Signer 6), both of whom reside in Utah. The couple are longtime family friends of Mr. Karony.

- Co-Signer 7: A physician and longtime family friend of Mr. Karony. This individual resides in Kansas.

On January 19, 2024, we provided to the Government contact information regarding Bradford and Jennifer Karony and Co-Signers 3–6, as well as information regarding the collateral described above. During a call on February 2, 2024, the Government advised that it continues to consider Bradford and Jennifer Karony not to be adequate co-signers for reasons set out in the Government's letter dated December 6, 2023 (ECF No. 31), that it considers Co-Signer 3 not to be an adequate co-signer on the basis that Mr. Karony's relationship with Co-Signer 3 may not be insufficiently close, and that it has not yet had contact with Co-Signers 4, 5 and 6. On February 2, 2024, we provided contact information to the Government for an additional co-signer, Co-Signer 7.

## Argument

In the prior proceedings in Utah and in the Eastern District of New York, the Government primarily argued for Mr. Karony's detention based on risk of flight. As set forth in detail in our prior correspondence of December 4, 2023 (ECF No. 28), we respectfully submit that the Government has overstated that risk and that, consistent with statements made by Judge Komitee, Magistrate Judge Cho, and Pretrial Services, conditions can be imposed to reasonably assure Mr. Karony's appearance through trial.

First, Mr. Karony is a U.S. citizen and served in the U.S. military for six years, including an approximately six-month combat deployment to Afghanistan. He was granted top-secret

# Petrillo Klein + Boxer

The Hon. Peggy Kuo
February 6, 2023
Page 5 of 7

security clearances from the U.S. government and has no criminal record. This background alone is compelling evidence of Mr. Karony's substantial ties to the U.S.[2]

Second, contrary to the Government's assertions, the fact that Mr. Karony has spent time in the United Kingdom is not probative of a risk of flight. Mr. Karony is a Florida resident and has a fiancée who is a U.K. citizen and has lived in the U.K. After spending time with his fiancée in the U.K., Mr. Karony has always returned to the United States, and, as evidenced by the six U.S.-resident co-signers proposed below, his time spent in the U.K. has not undermined his strong ties to the U.S.[3]

Third, Mr. Karony has longstanding ties in Utah and Florida. If pretrial release is permitted, Mr. Karony proposes to live in an apartment which he rents in Miami, Florida, where his fiancée will join him for substantial periods of time. As discussed above, Mr. Karony also proposes that he be subject to home detention and GPS monitoring.

Fourth, further detention in the MDC will prejudice Mr. Karony's ability to consult with counsel regarding his defense. Not only are calls and visits to the facility subject to timing and length restrictions, inmates there also "spend an inordinate amount of time on 'lockdown'—that is, locked in their cells, prohibited from leaving for visits [or] calls[.]" *Chavez*, 2024 WL 50233, at *5; *see also United States v. Boyd*, No. 21-CR-486 (SHS), 2022 WL 790771 (S.D.N.Y. Feb. 3, 2022) (continuing defendant's bail in part due to "lockdowns due to security issues" at the MDC . . . 'mak[ing] it impossible for attorneys to visit their clients to prepare strategy"). On multiple dates since Mr. Karony's incarceration at the MDC, there have been lockdowns due to the behavior of violent inmates and other threats. During the last week alone, the MDC has been under 20-hour-per-day lockdowns virtually every day.

In addition to the physical dangers and harms caused by the MDC's conditions and lockdowns, due to the MDC's restrictions on computer and internet access, Mr. Karony will not have direct, searchable access to any discovery database containing the hundreds of thousands, "if not millions" of documents that the Government anticipates producing in this case. As a result, Mr. Karony's ability to review discovery and prepare his defense will be gravely prejudiced if he is not released on bail.

Fifth, the Government has failed to establish that it is necessary to subject Mr. Karony to the "dreadful" conditions at the MDC (as reviewed further below) notwithstanding (i) his

---

[2] Mr. Karony has consistently demonstrated allegiance to U.S. government institutions, including by participating in a multi-hour interview with the FBI regarding SafeMoon in late 2021, as well as another 30-minute interview following his arrest, both of which took place outside the presence of counsel.

[3] As explained in our December 4 letter, Mr. Karony's application for a new U.S. passport—before his existing passport expired, and before his arrest in this case—is innocuous and does not create a flight risk. Mr. Karony's passport had been damaged, thereby requiring its replacement.

# Petrillo Klein+Boxer

The Hon. Peggy Kuo
February 6, 2023
Page 6 of 7

willingness to submit to substantial and rigorous bail conditions—including but not limited to home detention with GPS monitoring; (ii) his co-defendant having been granted bail over two months ago; and (iii) multiple friends and relatives prepared to co-sign his bond and post significant collateral on his behalf. In opposing Mr. Karony's prior bail submission, the Government focused on the purported inadequacy of Mr. Karony's parents as co-signers, as well as their concerns that the residential property Mr. Karony proposed to post as collateral may have been purchased, at least in part, "with proceeds traceable to the charged crimes." ECF No. 31 at 5. As set forth in further detail below, however, Mr. Karony now proposes five additional co-signers, none of whom we understand to share any of the factual circumstances about which the Government expressed concern with respect to Mr. Karony's parents, as well as $1.2M in collateral unrelated to the property to which the Government previously objected. Under these circumstances, further subjecting Mr. Karony to the unacceptable conditions of confinement in the MDC is not warranted here.[4]

Judge Furman's recent decision in *United States v. Chavez* well-illustrates the MDC's longstanding issues. There, the court held that the "unacceptable" conditions of confinement in the MDC met the high bar for establishing "exceptional reasons" why the detention of a defendant otherwise subject to *mandatory* detention pursuant to 18 U.S.C. § 3143(a)(2) "would not be appropriate." *Chavez*, 2024 WL 50233, at *1-*2. In so holding, the court detailed a litany of "dreadful" conditions at the MDC, emphasizing in particular the "inordinate amount of time" inmates spend locked in their cells, "prohibited from leaving for visits, calls, showers, classes, or exercise," *id.* at *5, the MDC's "notorious[] and, in some instances, egregious[] slow[ness] in providing necessary medical and mental health treatment to inmates," *id.* at *6, and the "long . . . problematic" physical conditions of the facility, which reportedly suffers from "visible mold on walls and ceilings, contaminated drinking water, vermin infestation, mouse droppings falling through HVAC vents, and roaches and flies in showers."[5] *Id.* at *7. In light of these unacceptable and inhumane conditions, "[i]t has gotten to the point that it is routine for judges in both [the Southern District of New York] and the Eastern District to give reduced sentences to defendants based on the conditions of confinement in the MDC." *Id.* at *1; *see also* Transcript at 9, *United States v. Rivers*, No. 18-CR-192 (WFK), ECF No. 134 (E.D.N.Y July 27, 2021) (describing confinement conditions alleged by MDC inmate as "a disgrace" that "reflects poorly on our system"); Transcript at 33, *United States v. Arias*, No. 22-CR-495 (PAE), ECF No. 34 (S.D.N.Y.

---

[4] To the extent that the Government contends, as it has in the past, that Mr. Karony is potentially a danger to the community because he could participate in the dissipation of assets, we submit that the Government cannot satisfy its burden of showing such danger by clear and convincing evidence. The bail statute does not provide a de facto presumption of detention for any of the three conspiracy charges alleged in the case or for cryptocurrency charges generally.

[5] The MDC's notorious inadequacies with respect to medical treatment, *see Chavez*, 2024 WL 50233, at *6 n.15 (collecting cases), are of particular relevance to Mr. Karony, who will require ongoing treatment for shoulder and knee injuries resulting from his military service.

# Petrillo Klein + Boxer

The Hon. Peggy Kuo
February 6, 2023
Page 7 of 7

May 5, 2023) (continuing defendant's bail in light of MDC's "unacceptable," "inhospitable, [and] terrible" conditions).  Here, where Mr. Karony offers substantial sureties and is willing to submit to significantly restrictive conditions of release, subjecting him to such conditions is unduly harmful and unwarranted.

In sum, we respectfully submit that suitable restrictions can address the Government's stated concerns.

\*   \*   \*

For the reasons set forth above, we respectfully request that the Court set a date for a detention hearing for consideration of Mr. Karony's revised proposed bail package.

Sincerely,

Adam H. Schuman
Caelyn Stephens
Petrillo Klein & Boxer LLP

*Counsel for Braden John Karony*