

|  |  |
|---|---|
|  | **U.S. Department of Justice** |
|  | *United States Attorney* |
|  | *Eastern District of New York* |
| JOE | *271 Cadman Plaza East* |
| F. #2021R00923 | *Brooklyn, New York 11201* |

February 9, 2024

By ECF

The Honorable Taryn A. Merkl
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Braden John Karony et al.
              Criminal Docket No. 23-433 (EK)

Dear Judge Merkl:

      The government respectfully writes in response to defendant Braden John Karony's February 6, 2024 renewed bail motion. (See ECF No. 44 (the "Def. Mot.")). For the reasons that follow, the defendant's motion should be denied.

      I.    Background and Procedural History[1]

          A.    The Defendant's Arrest and the District of Utah's Release Order

      On October 31, 2023, a grand jury in this District returned a three-count indictment charging the defendant and two co-defendants with one count of securities fraud conspiracy in violation of 15 U.S.C. §§ 78j and 78ff and 18 U.S.C. § 371; one count of wire fraud conspiracy in violation of 18 U.S.C. §§ 1343 and 1349; and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) for their roles in a series of fraudulent schemes concerning the digital-asset issuer SafeMoon US LLC. The defendant was arrested that night at Salt Lake City international airport.

      On November 3, 2023, the Honorable Daphne A. Oberg, Magistrate Judge, District of Utah, found that the "threshold was met for a detention hearing," and set the hearing

---

[1]     The government incorporates by reference its November 8, 2023 detention memo and December 6, 2024 letter brief in opposition to the defendant's renewed bail motion, including their recitation of the offense conduct, the instant indictment, and the defendant's arrest.

for November 8, 2023. (See United States v. Karony, 23-mj-01008 (D. Utah) (ECF No. 5)). On November 8, 2023, the court ordered the defendant to be released pending trial ("Release Order").

        B.        <u>Judge Komitee Vacates the Release Order and Detains the Defendant</u>

The government promptly moved to stay and revoke the Release Order. (ECF Nos. 11-12.) On November 9, 2013, the Honorable LaShann DeArcy Hall, United States District Judge, ordered a stay of the Release Order. (ECF No. 13.) On November 13, 2023, after oral argument, Judge Komitee vacated the Release Order and ordered the defendant to be removed to this District in the custody of the U.S. Marshals Service. (ECF No. 19.) In vacating the Release Order, Judge Komitee stated, with respect to the defendant:

> it seems utterly clear, [the defendant is] a person with access to substantial amounts of money based on the Government's proffer. We're talking about money that it would be potentially easy for the defendant to access, but hard for the Government to trace or track. And we don't have any of the moral suasion that would be associated with meaningful security posted by solvent sureties who have the kind of relationship with the defendant that would bring the moral suasion that I think we all would want to see.

(Nov. 13, 2023 Hrg. Tr. at 22:25-23:8).

        C.        <u>Magistrate Judge Cho Denies the Defendant's Renewed Bond Motion</u>

On December 4, 2023 the defendant proposed a new bail package nearly identical to that presented to Judge Komitee, but with the proposal of his parents as sureties and a Kansas City apartment he owns as collateral. (See ECF No. 28.) On December 6, 2023, the government opposed the defendant's motion, arguing that it failed to address the concerns identified by Judge Komitee when the Court denied him bail in November; and that it was otherwise insufficient to ensure the defendant's appearance in the Eastern District of New York. (See ECF No. 31.)

As for the defendant's proposal to have his parents serve as suretors, the government detailed why they were wholly inadequate for a number of reasons, including because they were both estranged from the defendant at the time of his arrest and because they are both fact witnesses in this action. (See id. at 3-5.) As for the former, the defendant had previously sued his mother and was actively litigating against her in connection with a commercial dispute in Utah state court. As for the latter, both of the defendant's parents and/or entities under their control have received funds from the proceeds of the charged fraud, and the defendant's mother had, since October 2022, been providing the Federal Bureau of Investigation ("FBI") with information about the defendant and his SafeMoon-related conduct, which she believed was illegal. (See id. at 4-5.)

On December 6, 2023, Magistrate Judge Cho, after hearing argument from the parties, denied the defendant's application without prejudice to proposing a revised bail package with a sufficient bond amount and sureties. (See ECF No. 32.)[2]

### D. The Defendant's Second Renewed Bond Motion

On February 6, 2024, the defendant renewed his motion for bail, proposing a bond in the amount of $1,000,000 to be secured by his parents and five additional suretors with collective collateral of $1.2 million. (See ECF No. 44 at 3-4.) For the reasons set forth below, both the proposed bond amount and proposed suretors—largely friends of the defendant's family who lack the kind of relationship with the defendant to offer the moral suasion necessary to dissuade the defendant from fleeing—are inadequate to ensure the defendant's appearance in the Eastern District of New York.

## II. Argument

### A. The Defendant Has Not Shown That He Is Not a Risk of Flight

As set forth in the government's November 8, 2023 detention letter and December 6, 2023 letter in opposition to the defendant's first bond motion (see ECF No. 11 at 3; ECF No. 31 at 2), the defendant has primarily resided in the United Kingdom since SafeMoon's launch in March 2021. He is engaged to marry a citizen of the United Kingdom and plans to get married there. (Id.) The defendant has not and cannot dispute these facts.

Instead, the defendant continues to claim that this prior military service, his return visits to the United States, his family ties to Utah, and his residential tie to Florida establish that he does not pose a risk of flight. (See ECF No. 44 at 4-5.) As the government has previously established, any of the defendant's historical ties to the United States have materially diminished over the two years during which he largely resided in the U.K. and became engaged to a U.K. citizen. (ECF No. 31 at 3.) Those ties further diminished less than two months ago when, while still detained, the defendant sold his Utah home for more than $1.8 million.[3]

Today, the defendant is in an entirely different posture: he is now under indictment and faces charges that, together, expose him to up to 45 years in prison if convicted, and likely tens of millions of dollars in potential forfeiture and restitution. The defendant's incentive to flee is great.

The defendant also claims that his pre-trial detention has prejudiced his ability to consult with counsel, and that the government cannot meet its burden in proving that if released he constitutes a danger to the community. (See ECF No. 44 at 5-6 & n.4.) As previously argued, the defendant's purported inability to adequately consult with counsel is undermined by the

---

[2] On January 2, 2024, the defendant made his initial appearance in this District and Your Honor arraigned him on the indictment. (See ECF No. 37.)

[3] On or about December 17, 2023, the government seized the proceeds of the house sale as fruits of the charged frauds pursuant to a judicially-authorized seizure warrant.

reality that detained defendants in this District regularly consult with their counsel to, among other things, prepare for trial. (See ECF No. 31 at 3.) The defendant's position is no different from every defendant in custody in the Bureau of Prisons and does not provide a basis for release. As for the defendant's danger to the community, the defendant could easily evade his proposed conditions of release by having others access digital wallets maintained outside the U.S. and around the world.

### B. The Defendant's Proposed Bail Package Is Inadequate

Even if the Court agreed that the defendant could be released from custody subject to a bail package with certain pretrial conditions, the defendant's proposed suretors, collateral, and bond are wholly inadequate to ensure the defendant's continued appearance for the reasons that follow.

The defendant's proposal to have his parents serve as suretors fails for the reasons previously argued by the government and adopted by Magistrate Judge Cho in denying the defendant's last bond motion—namely, they are both fact witnesses in this case, they were both estranged from the defendant until the time of his arrest and, indeed, Ms. Karony actively provided information to the FBI during the government's investigation while she was litigating a commercial dispute he brought against her.

The defendant's other proposed suretors (Co-Signers 3 and 5-7) are also inadequate.[4] Based on the government's interviews of these proposed suretors, Co-Signers 5-7 appear to have relationships primarily with the defendant's other family members but not the defendant himself, and Co-Signer 3 appears to have a very limited personal relationship with the defendant. Critically, none of these proposed suretors appears to have had material contacts with the defendant over the last two three years while he was operating SafeMoon and largely residing in the U.K. The proposed suretors thus lack the kind of relationship with the defendant that would bring the necessary moral suasion Judge Komitee called for when he denied the defendant bail and ordered him detained. (Nov. 13, 2023 Hrg. Tr. at 22:25-23:8).

---

[4] Despite attempts to contact Co-Signer 4, the government has not yet been able to interview him.

4

Finally, the proposed bond of $1 million is also inadequate. The defendant, as alleged, personally profited from his fraudulent conduct in the tens of millions of dollars. One million dollars is thus inadequate to deter the defendant from violating his bail given his access to digital assets that far exceed that amount.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
      John O. Enright
      Assistant U.S. Attorney
      (718) 254-6203

cc:     All Counsel of Record (by ECF)
        Clerk of Court (by ECF)