```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,      :   23-CR-00433 (EK)
                               :
      -against-                :   United States Courthouse
                               :   Brooklyn, New York
BRADEN KARONY and THOMAS       :
SMITH,                         :   July 8, 2024
                               :   12:00 p.m.
                               :
      Defendants.              :
- - - - - - - - - - - - - - - X
      TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE ERIC R. KOMITEE
               UNITED STATES DISTRICT JUDGE

                   A P P E A R A N C E S:

For the Government:       BREON PEACE, ESQ.
                          United States Attorney
                          Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

                     BY:  MATTHEW R. GALEOTTI, ESQ.
                          DREW GODFREY ROLLE, ESQ.
                          JOHN ENRIGHT, ESQ.
                          Assistant United States Attorneys

For Defendant #1:         DAVID B. SMITH PLLC
                              1123 Broadway
                              Townsend Building, Suite 909
                              New York, New York 10010

                     BY:  NICHOLAS DAVID SMITH, ESQ.

For Defendant #3:         FEDERAL DEFENDERS OF NEW YORK
                              One Pierrepont Plaza
                              Brooklyn, New York 11201

                     BY:  KATHRYN WOZENCROFT, ESQ.
                          JEFFREY STEVEN DAHLBERG, ESQ.

Court Reporter:           JAMIE ANN STANTON, RMR, CRR, RPR
                          225 Cadman Plaza East
                          Brooklyn, New York 11201
                          E-mail: JamieStanton.edny@gmail.com

Proceedings recorded by computerized stenography.  Transcript produced by
Computer-aided Transcription.
```

1         (In open court.)

2         THE COURTROOM DEPUTY: Criminal cause for status

3 conference, Docket No. 23-CR-433, USA versus Karony, et al.

4         Counsel, please state your appearances for the

5 record, beginning with the Government.

6         MR. GALEOTTI: Good afternoon, Your Honor.

7         For the Government, Assistant United States

8 Attorneys Matthew Galeotti, Drew Rolle, and John Enright.

9         THE COURT: Good afternoon.

10        MR. ROLLE: Good afternoon, Judge.

11        MR. DAHLBERG: Good afternoon, Your Honor.

12        Jeff Dahlberg and Kathryn Wozencroft, Federal

13 Defenders of New York, here on behalf for Thomas Smith,

14 present on the phone.

15        THE COURT: Good afternoon.

16        MR. SMITH: Good afternoon, Judge.

17        Nicholas Smith for John Karony, who is here with

18 me today.

19        THE COURT: Good afternoon.

20        Okay. So we set a comprehensive schedule for

21 expert-related disclosures and any motions relating thereto,

22 as well as other pretrial motions. I think the only item on

23 my agenda is to check in on the status of discovery and make

24 sure that there is no -- well, I have two items on my

25 agenda: One, to check in on the status of discovery and

1   make sure there is nothing going on that might threaten the
2   motions's calendar, and two, just confirm, if we have not
3   already, that both defendants would consent to a magistrate
4   judge presiding over jury selection rather than me
5   personally.
6            Why don't we start with the Government on the
7   subject of discovery.
8            MR. GALEOTTI:  Yes, Your Honor.
9            Since we last met, the Government has produced all
10  of the devices, the accounts and extractions that were
11  seized pursuant to a search warrant.  We did so quite
12  shortly after the last status conference.  In addition,
13  we've made productions related to grand jury subpoena
14  returns, bank account information, and other materials that
15  are relevant to the defense.  Certainly, at this time, the
16  defense has all of the affidavits supporting the search
17  warrants as well as the fruits of those search warrants.
18  And so they should be in position to at least begin -- or,
19  you know, hopefully the process of assessing whether they
20  have motions in response to the search warrants is underway.
21           Defendant Karony also does have some, I
22  understand, I will let them speak to this, but they have
23  filed a motion to dismiss, which the Government will be
24  responding to on the schedule ordered by the Court.
25           One small caveat, Your Honor, we did indicate this

1  in a letter to the Court when we made a production in May
2  which is that there were three devices which were seized in
3  connection with the arrest, so after the date of indictment
4  was returned, that CART at FBI, the forensic unit at FBI has
5  been unable to crack into as of this point, as of today, so
6  those are the only devices that have not been produced.
7  We've let the defendants know that should they provide the
8  passwords to those devices, we will extract them immediately
9  and turn them over.  That hasn't happened, but other than
10 those devices, everything that is in the Government's
11 possession is now in the defendant's possession for the
12 phones as well as discord warrant returns.
13             THE COURT:  I have a pop quiz for the Government,
14 mostly for my edification and not relating to the specific
15 facts of this case, and feel free to tell me that the answer
16 is you don't know or are otherwise not prepared to answer
17 this, but I keep getting near this question:  What happens
18 if the Government seizes a phone and does not have the
19 password for it and is unable to access its contents and the
20 defense says we believe there is exculpatory or even perhaps
21 material impeachment content on that phone?
22             MR. GALEOTTI:  Your Honor, certainly, it couldn't
23 be considered in the custody and control of the Government
24 if they have tried to obtain it and they are unable to.  I
25 think that's particularly so if it's the case that the

1 Defendant has access to the information that would entitle
2 them to review the phone. So if they do think that, they
3 should certainly notify the Government, and the Government
4 would make the phone available for them to review it.
5      I would also point out, Your Honor, it would be
6 extraordinarily unlikely, a defendant's own statements, for
7 example, would qualify as *Brady*, but if there's something on
8 the device other than that, I would suggest that they
9 certainly notify the Government.
10      THE COURT: Right.
11      MR. GALEOTTI: And figure out a way to get that
12 information to them, but I don't think it could be
13 considered under the caselaw of being in the Government's
14 custody or control if they've attempted to access it and are
15 physically unable to do so.
16      THE COURT: Okay. Again, that issue appears not
17 to have actually surfaced in this case as far as I am aware.
18      MR. GALEOTTI: May I just add one caveat, Your
19 Honor to what I said about the production?
20      The Government has yet to cross-produce the
21 defendant's devices to one another. Typically in a case, a
22 conspiracy case, we will do that about this time. We don't
23 do it for privacy and other reasons. We will approach, we
24 typically like to get consent before we do that, to make
25 sure there's nothing that needs to be redacted or what have

1  you.  If we are at that point right now, we just flag for
2  the Court that we are about to propose that to the
3  defendants after this status conference.  And those have
4  been produced, so that's just a matter of replicating the
5  devices which can be done very quickly.
6        THE COURT:  Okay.  Starting with, I think, Counsel
7  for Defendant Smith, what is the likelihood that we will
8  proceed on the current motions calendar?
9        MS. WOZENCROFT:  Your Honor, that was one of the
10  items we certainly wanted to address with the Court.  We
11  have made great strides since we were last here.  If the
12  Court remembers at the last conference, I believe it was
13  Mr. Darrow speaking for Mr. Smith at that point, spoke at
14  length about not only the breadth of discovery we had
15  received, but also the complicated nature of it requiring
16  significant analysis.  And outsourcing that analysis, first,
17  even to just maintain the data and be able to have access to
18  it, but then to even be able to start to look through it.
19  And we have done that.  The Government has given us -- I
20  think we're at ten terabytes of information now.  We have
21  identified through resource counsel a place to house it and
22  we have begun the process of analyzing it, but we are not in
23  a place yet where we could speak intelligently about which
24  experts we would be noticing and certainly what they would
25  be saying.  And I believe Mr. Karony's Counsel will speak to

1 that, as well.

2 We had reached out to the Government before the
3 holiday weekend to alert them to the fact that we would be
4 looking for an adjournment of those dates, a continuance of
5 those dates. We don't think at this point it impacts the
6 trial date. I believe our trial date is in April of next
7 year. So we have a good amount of time to move those -- to
8 move these dates and still be on track for trial, but I do
9 think -- we're going to need a significant amount of time to
10 continue to process the information.

11 And I just will speak briefly to the Government's
12 point, which they just raised, regarding cross-production of
13 devices.

14 Mr. Smith's devices, in and of themselves, I
15 think, were six terabytes of information. And I will tell
16 you that that is not where our focus has been. Our focus
17 has been on the other data the Government has provided thus
18 far. And so it will take us some time to move through that,
19 too, in order to respond to what I assume is an impending
20 request about cross-discovery. So that just adds another
21 piece to our list. And we have been working diligently, but
22 we can only work as diligently as the resources we have
23 provide.

24 THE COURT: There was a reason that I am not
25 remembering now that we contemplated motions regarding, you

1  know, this two-stage process for motions where first it was
2  going to be about experts and then it would be all other
3  pretrial motions. Can you remind me what genre of experts
4  we're talking about here?
5       MS. WOZENCROFT: I think there's sort of a broad
6  spectrum, first, with relation to cryptocurrency in general
7  and the norms and economics surrounding it. But then also
8  several experts related to actual data analysis, the -- the
9  chainalysis, so to speak, of what the data we're receiving
10 would show. There's also a very large number of internal
11 and external messages coming from the discord server which
12 is essentially information that we've received in massive
13 Excel spreadsheets which is not comprehensible through those
14 spreadsheets and has to be sort of reconfigured to make it
15 readable and accessible. And to the extent we would need
16 someone who could come in and talk about making that data
17 readable and what form it's in, we may need that as well.
18 So both sort of structurally just getting the jury to
19 understand what the information they're looking at is, but
20 then also experts with regards to practices and procedures
21 within the field.
22      THE COURT: Okay. Sorry, did the Government
23 indicate a date on which you expect to make the, quote,
24 unquote, cross-productions?
25      MR. GALEOTTI: We can do it this week, Your Honor,

1 just unless there is some issue that one of the defendants
2 raises about doing so.
3 　　　I would just flag, absolutely no quarrel with what
4 Ms. Wozencroft said that it would take time to review such
5 things. I will say the reason we proceed in this way is
6 because each Defendant has everything that they would have
7 standing to move on. So no doubt they need to review each
8 other's devices and there may be relevant information, but
9 for purposes -- before trial, for example -- but for
10 purposes of the motion to suppress, they will have
11 everything that they would have standing to suppress and
12 certainly, you know, can review -- have been able to review
13 that information.
14 　　　THE COURT: Okay. Is either Defendant
15 contemplating a motion to suppress?
16 　　　MR. SMITH: Your Honor --
17 　　　THE COURT: I'm asking for early disclosure of
18 motions that are not due until September. I am just trying
19 to understand the order of operations here.
20 　　　MR. SMITH: Yes, Your Honor, may I just address a
21 couple more points on the expert disclosure issue?
22 　　　THE COURT: Please.
23 　　　MR. SMITH: So the current deadlines are July 15th
24 for the Government and July 28th for the defense. I think
25 Ms. Wozencroft accurately explained the basic fields in

1  which expert testimony might come into play, but to put a
2  finer point on it, I think at least from Mr. Karony's
3  perspective, we might be looking at testimony from an
4  economist who might be able to offer an event study, which
5  is a kind of classic feature of some of these cases, and
6  then another expert in the area of crypto markets like
7  these --
8           THE COURT:  Okay.
9           MR. SMITH:  -- specifically.
10          And the reason I bring that point up is I don't
11 think the defense has enough time at this point to get our
12 ducks in a row there.
13          THE COURT:  That makes evidently good sense to me.
14 If I could just ask a discrete question:  Let's say we push
15 off the expert disclosures for all the reasons we're talking
16 about here today.  Would that, nevertheless, permit us to
17 proceed with respect to what I will call classic Fourth
18 Amendement motions on the current schedule?  Just, this
19 phone was seized without probable cause or the Government
20 waited too long to get a warrant or whatever the motion
21 would be.  All of that seems to me like it can continue as
22 scheduled.
23          MR. SMITH:  Your Honor, at least from Mr. Karony's
24 perspective, I think that's right, but I will let
25 Ms. Wozencroft chime in if she disagrees.  I see her nodding

1 her head, so.

2 THE COURT: To me it looks like she's thinking.
3 She's sort of glancing up and to the right a little bit.

4 MS. WOZENCROFT: I'm processing, Your Honor.

5 At the moment, I -- at the moment, I don't see a
6 reason why we wouldn't be able to, short of information that
7 comes to light through our review of the productions that
8 would change what I believe is a September date for those
9 motions, so -- and certainly we would reach out to the Court
10 far in advance of that date if we did expect to need a
11 continuance there.

12 THE COURT: Okay.

13 MR. GALEOTTI: Your Honor, the Government would
14 just propose that it does make good sense to proceed with
15 the typical Fourth Amendement motions. Now that could
16 change the landscape of --

17 THE COURT: You all are not moving around enough
18 for the motion sensors, perhaps. There we go. That was
19 scary.

20 MR. GALEOTTI: So Your Honor, I was just saying
21 from the Government's perspective, it does make good sense
22 to proceed with the typical Fourth Amendement issues first.
23 A, to get those out of the way. B, it could change the
24 landscape of what an expert's opining on. We don't want to
25 have multiple, quite frankly, rounds of expert briefing,

1     opinions, disclosure, et cetera.
2             And so we have no -- certainly no objection to the
3     motion to adjourn the expert deadlines.  We would suggest
4     that proceeding on other issues to the extent they're out
5     there, it makes good sense to do so in advance of that.
6             THE COURT:  Here's a proposal, and you all can
7     tell me your reactions.  Let's leave the current pretrial
8     motion schedule in place as it relates to Fourth Amendement
9     or I don't know if there are postarrest statements here,
10    Fifth Amendment motions, both.  But say that any motions
11    that are dependent on the colloquy we are about to have
12    about experts will be delayed six weeks, *i.e.*, 42 calendar
13    days.  And if anybody needs more time, even beyond that, you
14    can come back at our next status conference and say that the
15    expert schedule needs to be delayed perhaps even further and
16    why, but otherwise, we will be full speed ahead with respect
17    to the quote/unquote, classic motions.
18            Any objection from the Government?
19            MR. GALEOTTI:  No, Your Honor.
20            MR. SMITH:  Judge, just one thought here.
21            We have been having conversations with potential
22    experts for some time; however, our budget for approval to
23    expend funds on an expert was approved, I think, last week.
24    And so we weren't able to make any commitments with experts
25    about how much they'd be paid.  And as Your Honor knows,

1  they are not inclined to do -- perform any pre, you know,
2  work before they receive an engagement.
3        So I think, Your Honor, we would like to ask the
4  Court for a 90-day extension on the -- on the expert
5  disclosures and, of course, the Government would receive a
6  similar extension of time.
7        On the 90-day, specifically, Judge, I think --
8        THE COURT:  That, I think, might -- let me just
9  figure out what this looks likes, because my only question
10 about that is whether it requires us to move the trial date,
11 which, if we have to, we have to.  But the current schedule
12 kicks off on July 26th as to these motions and ends on
13 October 23rd.  Three months thereafter would be November,
14 December, January 23rd or thereabouts, which would still
15 leave us with eight weeks before trial.
16       I think that's fine.  I think that's fine.
17       MR. SMITH:  Thank you.
18       THE COURT:  Assuming 90 days lands us on a
19 weekday, that's my major concern here.  Why don't we say
20 12 weeks rather than 90 days, so that we know that deadlines
21 that are on weekdays continue on weekdays.
22       Okay.  So the existing motion schedule will be
23 preserved as is for Fourth and Fifth Amendment-related
24 motions.  We will extend the existing calendar by 12
25 calendar weeks for each of the deadlines relating to

1  experts.  So the July 26th deadline, the August 9th,
2  August 15th, and then we had the three motions dates,
3  September 13th, October 11th and October 23rd, all of that
4  will be extended 120 days as to the expert-related motion
5  practice.
6       Let's pick a date for a next status conference,
7  which, I think, if we're going to be getting Fourth and
8  Fifth Amendment motions on September 13th, I think it makes
9  sense to do it about a week after that so we can hash
10 through the need for a hearing a little bit.
11      So Drew, anything within the third or fourth week
12 of September, I think.
13      THE COURTROOM DEPUTY:  That's fine, Judge.  We
14 have a trial schedule, Your Honor, that week.
15      THE COURT:  Which day?
16      THE COURTROOM DEPUTY:  The week of the 15th, every
17 day that week.
18      THE COURT:  Let's do the 22nd then or the week of
19 the 23rd, I should say.
20      THE COURTROOM DEPUTY:  We have availability,
21 Judge, at 11:30 a.m. on Tuesday, September 24th.
22      MR. GALEOTTI:  And what time was that?
23      THE COURT:  11:30 a.m., I think we said, Tuesday,
24 the 24th of September.
25      Does that work for the Government?

1            MR. GALEOTTI:  It does, thank you, Your Honor.
2            THE COURT:  And for the defense?
3            MS. WOZENCROFT:  Yes, Your Honor.
4            MR. SMITH:  Yes, Judge, thank you.
5            THE COURT:  Have either or both defendants
6    indicated their position on having a Magistrate Judge select
7    the jury?
8            MS. WOZENCROFT:  We have not, Your Honor.
9    Mr. Smith is participating by phone, so we would want to
10   consult with him.
11           THE COURT:  Okay.  We'll call that an open loop.
12   I will ask that at the next status conference, but if you
13   can have an answer by then, by September 24th, we'll lock it
14   down at that point.
15           Does the Government have an application?
16           MR. GALEOTTI:  We do, Your Honor.
17           In light of the motion schedule, in light of the
18   fact that the defendants are continuing to review discovery,
19   and because there have been at least preliminary discussions
20   regarding resolution, for all of those reasons, the
21   Government asks for an order of excludable delay until the
22   next status conference on September 24th.
23           THE COURT:  Ms. Wozencroft?
24           MS. WOZENCROFT:  We would consent to that
25   application, as well, Your Honor.

Jamie Ann Stanton, RMR, CRR, RPR
Official Court Reporter

1  I would just make a further application to ask the
2  Court permit Mr. Smith participate by phone since he is out
3  of state just for the status conference. Obviously, he
4  would like to be here and will be here for substantive
5  proceedings, but --
6  THE COURT: He lives on the west coast?
7  MS. WOZENCROFT: He lives in New Hampshire, but
8  it's about an eight-hour drive.
9  THE COURT: Yes, that's fine.
10  MS. WOZENCROFT: Thank you.
11  THE COURT: And?
12  MR. SMITH: Mr. Karony would make a similar
13  application. He is in Utah.
14  THE COURT: That application is granted, as well.
15  What's Mr. Karony's position on exclusion of time?
16  MR. SMITH: No objection, Your Honor.
17  THE COURT: So for all the reasons articulated by
18  the Government and for the, I think, obvious complexity of
19  at least the discovery issues in this case, I do find that
20  the interests of justice served by excluding time through
21  September 24th outweigh any interests of the parties or the
22  public in a more expedited schedule at this point and I
23  order that time excluded.
24  Anything else from the Government's perspective?
25  MR. GALEOTTI: No, thank you, Your Honor.

1           THE COURT: From the defense?

2           MS. WOZENCROFT: No, thank you, Your Honor.

3           MR. SMITH: No, Judge. Thanks.

4           THE COURT: Thank you all. Enjoy the rest of the

5 summer.

6           (Matter adjourned.)

7

8                     *    *    *    *    *

9

10 I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

11

12    /s/ Jamie Ann Stanton                July 8, 2024

13     JAMIE ANN STANTON                      DATE