# DAVID B. SMITH, PLLC

**Nicholas D. Smith**
1123 Broadway, Ste 909
New York, NY 10010
917.902.3869
nds@davidbsmithpllc.com

**David B. Smith**
108 North Alfred Street, 1st FL
Alexandria, VA 22314
703.548.8911 / fax 703.548.8935
dbs@davidbsmithpllc.com

Mar. 31, 2025

**VIA ECF**
The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

        RE:    *U.S. v. Braden J. Karony, et al.*, 1:23-cr-433-EK
              Letter Concerning the Government's Joint Filing on Jury Instructions

Dear Judge Komitee:

      On March 10, the government filed a set of proposed jury instructions and a verdict form. ECF No. 117. It attached Karony's objections to the government's proposals as well as his counterproposals. ECF No. 117-C. Karony produced these to the government rather than separately filing a set of proposed instructions because the government told his lawyer that the parties were required to file these dueling proposals jointly.

      Before making the joint filing, the government attached a cover letter with a 4-page legal brief on why Karony's instructions should be rejected. Because it did not share this document with Karony's counsel before making the joint filing so he could respond, Karony may either grant the government a unilateral briefing opportunity on the instructions or respond in an additional filing that could be deemed to run afoul of the apparent joint filing requirement. Karony will respond to the government's arguments here, assuming as he does that the Court does not intend one-sided legal briefing.

      **Exchange Act domesticity requirement.** The government contends that the Exchange Act has no domesticity requirement. It cites no authority. ECF No. 117 at 2. It adds, "the defendant offers no support to its inclusion." *Id.* That is mistaken. The first support Karony will adduce is the government, which argued in opposition to Karony's motion to dismiss that the requirement of a domestic securities transaction was a "merits question," by which it meant that it could not be resolved under Rule 12 but rather was a fact question for the jury. Gov't Opp. to Mot. to Dismiss, ECF No. 75 at 16 ("As a merits question, it is not a basis to dismiss an indictment, particularly where, as here, the extraterritoriality issue requires a full presentation of evidence."). To the extent the government's objection is interpreted to mean that the question of a statute's extraterritorial reach only arises in the civil and not criminal context, a glance at the case law and motion-to-dismiss briefing shows that is not accurate. *United States v. Napout*, 963

F.3d 163, 180 (2d Cir. 2020); Karony Reply, ECF No. 76 at 9.  The relevant test for a domestic securities transaction in this crypto asset context is governed by *Williams v. Binance*, 96 F.4th 129, 138 (2d Cir. 2024), which the government makes no effort to distinguish.

**Definition of "security."**  The test for an investment contract is governed by *SEC v. WJ Howey Co.*, 328 U.S. 293 (1946).  There, the Supreme Court held that "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his *money* in a *common enterprise* and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether *the shares* in the enterprise are evidenced by formal certificates or by *nominal interests* in the physical assets *employed in the enterprise.*" *Id.* at 299 (emphasis added).  As SafeMoon-token swapping satisfies none of these elements, the government aims to rewrite the law.  When the Supreme Court says "money," it doesn't mean money, it means "some [] definable consideration in return for an interest," the government asserts, citing a Teamsters case from 1979.  ECF No. 117-C at 20 (citing *Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551 (1979)).  Except, that decision does not abrogate *Howey*'s "investment of money" standard.  To the contrary, the *Teamsters* case held that an employee who participates in a noncontributory pension plan does not make a *Howey* "investment of money," citing a string of cases requiring an investment of money for an investment contract.  439 U.S. at 560.

As for a "common enterprise," the government's proposal instructs that "horizontal commonality is the tying of each individual investor's fortunes to the fortunes of other investors by *the pooling of assets*, usually combined with the pro-rata distribution of profits." ECF No. 117-C at 20 (emphasis added).  Karony added "their" before "assets" in the phrase "pooling of assets." *Id.*  For the government attempts to hollow out the meaning of *Howey*'s "common enterprise" by suggesting commonality between investors who have no property rights in the "pooled assets." *In re: SafeMoon US LLC*, Bankruptcy Case No. 23-25749, Doc. 135 (D. Utah) (concluding that SafeMoon holders did not have property rights in liquidity pool).

The government contends that it "need only establish that SFM *is* a security; it is not required to prove that SFM *is not* currency." ECF No. 117 at 2.  The problem here is that the text of the Exchange Act—notably unlike the Securities Act of 1933—states that an asset may not both be a "currency" and a "security." 15 U.S.C. § 78c(a)(10).  For the same reason the government is required to prove an "investment contract" to establish a "security," it must also show that this asset is not a "currency": these are both definitional questions governing the existence of a "security," even if only one is via negativa. The government can cite no authority supporting its position, as this is the first time it has brought a criminal Exchange Act case to trial in this crypto asset context.

**Conspiracy to violate domestic money laundering statute.**  The indictment charges Karony with conspiracy to commit a money laundering offense under 18 U.S.C. § 1956(a)(1).

Ind. at 25. That is the domestic laundering statute. Karony asked the government whether it intended to additionally or instead charge § 1956(a)(2) and whether it intended to offer evidence of an agreement to commit international laundering under that statute, *i.e.*, involving transfers of funds "from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States." § 1956(a)(2). It would appear that most or all of the potentially relevant "financial transactions" in this investigation come under subsection (a)(2), not (a)(1), assuming arguendo they satisfied the other elements of the offense. While the government indicated it will not offer evidence of international laundering in this case, it objects to an instruction clarifying that international transfers are not "financial transactions" for purposes of the charged domestic money laundering conspiracy. ECF No. 117-C at 41. However, Karony's edit is appropriate given the statute charged and the government's representation to Karony.

**Venue.** The government appears to contend that it does not have to prove an overt act occurred in this district in furtherance of the § 1349 wire fraud conspiracy. ECF No. 117 at 4. The Second Circuit has directly held otherwise. *United States v. Tzolov*, 642 F.3d 314, 319 (2d Cir. 2011) (overt act required for venue with respect to both § 1349 conspiracy and Exchange Act conspiracy).

Dated: Mar. 31, 2025

Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com
*Counsel for Braden J. Karony*