```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

 UNITED STATES OF AMERICA,
                                              MEMORANDUM & ORDER
                -against-                     23-CR-433 (EK)

 BRADEN JOHN KARONY, KYLE NAGY, and
 THOMAS SMITH,

                     Defendants.

--------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Jury selection in this case is now scheduled for May 5 — approximately sixteen months after defendant Karony's arraignment on January 2, 2024. ECF No. 37. Jury selection was initially scheduled to begin on March 24, but the Court previously adjourned that date at defense counsel's request. Mar. 13 Conf. Tr. 2:23-3:1, 10:21-11:4, ECF No. 126.

        On April 18, the government produced to the defense a summary chart marked for identification as GX 6006. The exhibit is a compilation of fifty-three slides summarizing (among other things) the alleged flow of digital assets from SafeMoon's liquidity pools to wallets and accounts controlled by the defendants. (A copy of GX 6006 is attached hereto.) Karony objected to the summary exhibit in a letter filed on April 20, arguing that he lacked sufficient time to review and test the underlying transaction data. *See* Def. Ltr. dated April 20, at

3, ECF No. 149. At that time, the defense requested that the exhibit and its accompanying testimony be precluded. *Id.* at 4.

At a status conference held two days later, the defense asserted that verifying the representations in the summary exhibit would require spending "hundreds of thousands of dollars" to hire a "commercial vendor." Apr. 22 Conf. Tr. 37:17-21, ECF No. 155. The government represented that the chart was created by an investigative agent with the Internal Revenue Service, not a private vendor, and that the figures on the slides relating to digital-token transfers are derived entirely from publicly available blockchain data. *Id.* at 26:13-18, 38:2.

The defendant contends that this blockchain data should have been produced pursuant to Rule 16, notwithstanding its public availability. At the same time, both parties agree that "several months ago," the government informed the defense that because blockchain data was publicly available, the government would not be producing it to the defense in discovery. *See id.* at 38:11-17; Gov't Resp. to Def. Ltr. 4, ECF No. 150.

After the defendant's objection, the government undertook (at the Court's request) to produce the "backup" for each chart to the defense. *See* Apr. 22 Conf. Tr. 81:10-23. That production occurred on April 22. For each slide contained

2

in GX 6006, the government has now provided Karony a spreadsheet listing the transactions that appeared on the slide; a description of those transactions; the transaction identification numbers; the times at which each transaction occurred; the assets involved in the transactions; the overall amount of each transaction; and the origin and destination wallets for each transaction.  *Id.* at 32:9-15, 81:10-20.  According to the government, this "backup" material reveals that GX 6006 reflects 1,313 unique transactions, rather than (as the defense argues) over 3,000 transactions.  *Compare* Gov't Ltr. dated Apr. 24, at 1, ECF No. 159, *with* Def. Ltr. dated Apr. 20, at 1.

After the defense protested that checking the summary chart's accuracy could take up to four months, *see* Apr. 22 Conf. Tr. 36:11-13, the Court directed the government to provide its best estimate of how much time its summary witness required to craft the summary from scratch.  *Id.* at 50:19-24.  In response, the government has indicated that the IRS agent witness required only "three to four business days to download and analyze the blockchain data . . . represented visually in GX 6006."  *See* Gov't Ltr. dated Apr. 23, at 1, ECF No. 157.

At the status conference, when the Court pressed the question of what remedy the defense was seeking, counsel requested only that the exhibit be precluded.  *See* Apr. 22 Conf.

3

Tr. 48:3-6. Following the conference, however, defense counsel submitted a letter that requested a litany of sanctions or remedies, in the alternative: (1) preclusion of GX 6006 and any accompanying testimony; (2) an order directing a title insurance agency to release funds to Karony so he may hire additional counsel;[1] (3) a three-month adjournment of trial; or (4) permission for Karony's counsel to withdraw from the case. *See* Def. Ltr. dated Apr. 24, at 1-2, ECF No. 158.

For the reasons that follow, the motions must be denied.

***The Motion for Preclusion.*** A district court retains "broad discretion to determine that a continuance, rather than the exclusion of evidence, suffice[s] to cure any harm [the defendant] alleges he suffered" because of an ostensibly belated Rule 16 disclosure. *United States v. Monsanto Lopez*, 798 F. App'x 688, 690 (2d Cir. 2020).[2] Here, the defense has now represented that an adjournment would (in its view) constitute sufficient relief. *See* Def. Ltr. dated Apr. 24, at 1-2. So, the more drastic remedy of preclusion is not necessary. *See, e.g., United States v. Chang*, 574 F. Supp. 3d 94, 99 (E.D.N.Y.

---

[1] The precise nature of Karony's request for an order "directing Real Advantage Title Insurance Agency to release funds belonging to Karony" is unclear. Def. Ltr. dated Apr. 24, at 1, ECF No. 158. To the extent he is seeking a modification of his bail conditions, the Court will take up any such request when the parties are next gathered in person.

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2021) (denying preclusion where any prejudice stemming from late disclosure "was cured by [an] adjournment").

***The Motion for an Adjournment.*** "[T]rial courts enjoy very broad discretion in granting or denying trial continuances." *United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013). For several reasons, the Court determines that a second adjournment is not appropriate here.

The Court is unconvinced that the defense could not have identified and analyzed the relevant SFM transactions before the government disclosed GX 6006. For starters, many of them are the subject of allegations in the indictment. To take one prominent example: in its effort to illustrate the difficulty of vetting GX 6006, the defense chose to highlight slide seven, which shows a transfer of forty-six trillion SFM tokens from the SafeMoon liquidity pool to an account controlled by Kyle Nagy. *See* Def. Ltr. dated Apr. 24, at 2. This transaction is at the center of the case, and is the subject of an explicit allegation by the grand jury. *See* Indictment ¶ 34, ECF No. 1 ("Between March 6, 2021 and March 15, 2021, Nagy used SFM LP tokens to remove approximately 46 trillion SFM . . . from the SFM liquidity pool."). Indeed, the indictment expressly alleges several other transactions that appear in GX 6006. *See, e.g., id.* ¶ 33 (removal of 36.6 trillion SFM tokens from liquidity pool, as illustrated on slide four of GX 6006), ¶ 48

5

(removal of sixty-six trillion SFM tokens from liquidity pool, as illustrated on slide six of GX 6006), ¶ 54 (removal of 13.4 trillion SFM tokens from liquidity pool, as illustrated on slide thirteen of GX 6006).  It is therefore not the case that the relevance of these transactions was indiscernible before the government disclosed GX 6006.

Moreover, the defense has had, and will continue to benefit from, the assistance of Professor Bruce Mizrach, an expert witness whom defense counsel has described as the "preeminent expert" on cryptocurrency markets.  Mar. 13 Conf. Tr. 22:6-15.  Professor Mizrach himself opined that the retail investors who purchased the token at issue could (and should) have seen publicly available data concerning the defendants' withdrawal of funds from the SFM liquidity pools.  *See* Annotated Expert Disclosure of Prof. Mizrach 5, ECF No. 152-1.  If an ordinary retail investor could have identified at least some of the transactions underlying GX 6006, then it follows that the "preeminent expert" on cryptocurrency markets can do — and could previously have done — the same.

The defense has also had (and will continue to have) additional assistance in analyzing the transaction data underlying GX 6006.  The defense acknowledges that its effort to verify the transactions in GX 6006 will begin with the "backup" data that the government voluntarily provided.  *See* Def. Ltr.

6

dated Apr. 24, at 2.  And the government has committed to provide additional data.  *See* Gov't Ltr. dated Apr. 24, at 1 (stating that the government would provide "PDF copies of the transactions listed in GX-6006" before midnight on April 25). Finally, the Court has also now invited defense counsel to apply for a "mentee" attorney or other assistance under the CJA plan for this district.[3]  *See* Apr. 22 Conf. Tr. 79:17-23.

      The Court's conclusion is consistent with those in other (arguably more complex) cases.  *United States v. Budovsky* is instructive.  There, the defendant requested a third adjournment of his trial for conspiracy to commit money laundering.  No. 13-CR-368, 2016 WL 386133, at *1 (S.D.N.Y. Jan. 28, 2016).  He argued that he only had "a little less than two months" to review tens of millions of financial transactions underlying the government's summary exhibits.  *Id.* at *1-2, *13. Judge Cote rejected that argument, noting (among other things) that the defense had long been on notice about the government's reliance on the transactional data; that the government's own investigation had only taken "about two weeks to complete"; and that the defendant had not shown why additional time would "be

---

[3] No such application has yet crossed the undersigned's desk.

of material assistance."[4]  *Id.* at *13.  Those reasons apply with similar force here.

As a concluding note, the Court's schedule (as currently constituted) does not permit a short-term adjournment.  Indeed, given the press of other long-scheduled matters, any adjournment would need to be longer than the three months requested by Karony.  Granting Karony's request, therefore, would unnecessarily delay trial.  The motion for an adjournment is denied.

***The Motion to Withdraw***.  Lastly, defense counsel argues that if an adjournment is not granted, he cannot effectively assist his client and must withdraw.  But it is axiomatic that "[n]ot every restriction on counsel's time or opportunity to . . . prepare for trial violates a defendant's Sixth Amendment right to counsel."  *Morris v. Slappy*, 461 U.S. 1, 11 (1983).  Trial lawyers are often called upon to meet rigorous deadlines.  *See United States v. Raimondi*, 760 F.2d 460, 462 (2d Cir. 1985) ("The lawyer who assumes th[e] Court will relieve him of an onerous but manageable deadline . . . does so at his own peril.").  Thus, "only an unreasoning

---

[4] Defense counsel has also suggested that the government "is in possession of additional blockchain data that it has not produced to the defense."  *See* Def. Ltr. dated Apr. 24, at 3.  But the defense offers no evidence for this contention.  The *Budovsky* court concluded that a similar argument — which suggested that the government had access to "locked views" in the underlying transactional data that were not available to the defense — was "unfounded."  2016 WL 386133, at *13.

and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris*, 461 U.S. at 11-12.

The record should dispel any suggestion of such arbitrary insistence here. The Court has already accommodated one defense request for additional time. The motion to withdraw must therefore be denied.

SO ORDERED.

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    April 29, 2025
          Brooklyn, New York