UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

 UNITED STATES OF AMERICA,

          -against-                          **MEMORANDUM & ORDER**
                                             23-CR-433
 BRADEN J. KARONY,

                    Defendant.

------------------------------------x
ERIC KOMITEE, United States District Judge:

          Defendant Braden Karony was convicted earlier this
year, following a jury trial, of participating in three charged
conspiracies (to commit securities fraud, wire fraud, and money
laundering).  Jury Verdict, ECF No. 198.  Now before the Court
are motions from the government and defense, seeking different —
and largely conflicting — remedies with respect to Karony's
assets.

          Karony moved for an order "clarifying" the "legal
status of" various assets, including funds held in his name at
multiple financial institutions, so that he can liquidate those
assets to pay new counsel for sentencing.  ECF No. 215.  While
that "clarification" motion was pending, the government moved to
restrain certain funds that Karony held at Citibank, N.A.  ECF
No. 219.  The Court granted this restraint, but only on a
temporary basis; the government now seeks to continue it.

For the reasons set forth below, Karony's motion is denied, and the government's is granted.

## I.    Background

The government did not move to restrain Karony's assets at the outset of the case.  At a February 2024 bail hearing, however, the government stated that it would object to Karony using his assets to pay legal fees because they constituted the "proceeds of the fraud."  *See, e.g.*, Feb. 9, 2024 Bail Hr'g Tr. 57-58, 66, 106-08, ECF No. 58.  This led the presiding magistrate judge to appoint Criminal Justice Act counsel, Nicholas Smith, Esq. — who continues to represent Karony now.  *Id.* at 106-08.  As far as the Court has been made aware, the government made no other effort to restrain any of Karony's assets in *advance* of trial.

Karony was convicted in May 2025.  Sentencing is currently scheduled for October 31.

### A.    Karony's Motion For Clarification

Karony's motion for "clarification" asks the Court to bless his request to use certain assets to pay new (retained) counsel.  ECF No. 215 (hereinafter "Clarification Mot."), at 1.  These assets include the cash behind a "Citibank cashier's check in the amount of $1.2 million," certain assets in an account at FV Bank International Inc. ("FV Bank"), and other funds.  *Id.*  Alternatively, to the extent the Court was not inclined to grant

2

that motion outright, Karony sought a *Monsanto* hearing "to determine which of the subject assets are traceable to the crime of conviction" and, conversely, which could be used to hire counsel. *Id.* at 6-7; *see also United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991).

## B.    The Government's Initial Motion For a Restraining Order

While Karony's motion was pending, the government sought an order from this Court restraining, pursuant to the All Writs Act, the contents of four Citibank accounts ("the Citibank funds").[1]  *See* Gov't Letter dated August 13, 2025 (hereinafter "Restraint Mot."), ECF No. 219.  These funds total approximately $4 million.  *Id.* at 2.  This restraint was necessary, according to the prosecution, to ensure that the funds are available to pay an eventual restitution award.  The parties disputed whether such a restraint was appropriate under applicable law.

On August 13, the Court granted that restraining order as to the Citibank accounts — but only for a temporary period, given the Court's questions about the propriety of doing so under the All Writs Act.  *See* ECF No. 220 (hereafter "Temporary Order"), at 2-3; Docket Orders dated Aug. 15 and Sept. 10, 2025.

---

[1] The accounts at issue are identified by account number in ECF No. 219. Before Karony was arrested, he drew four cashier's checks against these accounts (made out to himself and a real estate company he owned), but Citibank stopped payment on the checks.  *See* ECF Nos. 219, 221, 222.  Among those four checks is the $1.2 million check that Karony references in his motion.  *See* Clarification Mot. 2; ECF No. 221, at 1.

The Court also directed the government to "consider" filing a civil action for restraint pursuant to another statute that the government had referenced in its August 13 letter — the Federal Debt Collection Procedures Act, 28 U.S.C. § 3205(a).

Having been extended twice, the Temporary Order is now set to terminate on September 19.

## C.    Karony's Updated Financial Affidavit

The Court also ordered Karony to file an updated financial affidavit.  Karony's response, filed on August 22, reveals a litany of assets totaling more than $10 million.[2] Updated Fin. Aff. 1-3, ECF No. 224-1.  Karony states that most of these assets are currently inaccessible to him for various reasons.  *See id.* at 2-3.  The government disputes that characterization.  *See* ECF No. 225 (hereinafter "Continuation Mot."), at 21-22.[3]

## D.    The Government's Motion to Continue the All Writs Act Restraint

On August 29, the government moved to continue the previously ordered restraint of the Citibank accounts.

---

[2] Karony disclosed the value of some assets in currencies other than U.S. Dollars.  *See* Updated Fin. Aff. 2-3.  This estimate is based on converting all assets to U.S. Dollars.

[3] The government concedes that the other assets listed in Karony's updated financial affidavit may be used to pay counsel.  *Id.* at 21-22 (arguing that the availability of these assets means Karony has funds to pay counsel, such that no *Monsanto* hearing is warranted).

Continuation Mot. 10-14.  In response to the Court's directive, the government conceded that it cannot meet the legal standard to restrain Karony's assets under the Federal Debt Collection Procedures Act.  *Id.* at 11.[4]  Nevertheless, the government argued, continued restraint is appropriate under the All Writs Act, in light of Second Circuit case law. *Id.* at 11-13.

**E.   The Government's Submission Regarding the Loss Calculation Under U.S.S.G. § 2B1.1**

After the government moved to continue the Temporary Order, it submitted a separate letter concerning the evidence it would rely on to establish "Loss" for purposes of Section 2B1.1(b)(1) of the Sentencing Guidelines.  *See* Letter dated Sept. 10, 2025 (hereafter "Loss Ltr."), ECF No. 228.  There, the government wrote that "the total loss amount reasonably cannot be determined" for Section 2B1.1(b)(1), "due to difficulties with calculating the reduction in the value of the Safemoon securities to all investors caused by the offense."  *Id.* at 1-2. The government indicated that it would instead ask the Court to

---

[4]  The government states it cannot make this showing because it cannot "affirm . . . specifically the amount of the debt claimed by the United States" or "that the value of the property to be garnished does not exceed to amount of the debt claimed."  Continuation Mot. 11.  The government also notes that prejudgment restraint requires the government to "file a civil action on a claim for debt" and provide "reasonable cause to believe the debtor has already hindered or delayed (or is about to hinder or delay) the ability of the government to collect a debt."  *Id.* at 8.  And it argues that it is generally unnecessary to file a new civil action to seek restitution in a criminal case.  *Id.*

use Karony's *gain* as an alternative measure of loss. *Id.* at 2 (citing U.S.S.G. § 2B1.1(b)(1) cmt. (B) to Loss Table).

The government's concession that total loss cannot reasonably be determined led Karony to attack the Temporary Order on a new basis: that even if such a restraint was available in principle under the All Writs Act, the government's concession that it cannot show loss means that the restrained funds will not be required to pay an eventual restitution order. *See* Karony Loss Calculation Letter 1-2, ECF No. 229. The government then responded to the defense letter about its Section 2B1.1 concession, arguing that an inability to determine *total* loss does not preclude it from seeking restitution for individual victims who "suffered actual, provable, losses." ECF No. 233, at 3.

## II. Discussion

The Citibank funds will remain restrained pending sentencing, on the terms set forth in the Court's earlier order. *See* Temporary Order at 2-3. Karony's motion for a *Monsanto* hearing is denied.

## A. Restraint on Citibank Funds

Generally speaking, the All Writs Act confers power on the Court only in the absence of a statute or rule that is directly on point. "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All

Writs Act, that is controlling." *Carlisle v. United States*, 517 U.S. 416, 429 (1996).

Still, the government correctly points out that the Second Circuit has expressly authorized the use of the All Writs Act to impose the restraint it seeks here.  In *United States v. Catoggio*, 698 F.3d 64 (2d Cir. 2012) (per curiam), the court held that the All Writs Act can be invoked to restrain a defendant's assets between conviction and sentencing in order to ensure their availability for restitution.  *Id.* at 65.  Even if *Catoggio* is in tension with the Supreme Court's statement that the All Writs Act should not be used when another statute provides grounds for relief, this Court is bound to follow *Catoggio.*[5]  *See Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) (different *Monsanto*) (district courts must follow Second Circuit precedent, even if it "cannot be reconciled with an earlier, authoritative decision of the Supreme Court," until such precedent is reconsidered *en banc* or rejected by later Supreme Court decision).

At the same time, *Catoggio* did not authorize the restraint of all a defendant's assets, irrespective of the

---

[5] There is at least some question as to whether the Federal Debt Collection Procedures Act does "address[] the particular issue at hand." *Carlisle*, 517 U.S. at 429.  As another district court observed, the statute may not authorize prejudgment remedies in criminal cases at all: the parties "cannot cite to a single *criminal* case — nor can the Court identify any — wherein a Court allowed prejudgment remedies [under the Federal Debt Collection Procedures Act] *prior to sentencing*." *United States v. Johnson*, 438 F. Supp. 3d 1185, 1189-90 (D. Idaho 2020).

expected *amount* of restitution.  On the contrary, *Catoggio* pointedly noted that the "eventual restitution order" in that case "was certain to exceed" the amount the district court had restrained.  *Id.* at 69.  This was true in light of the defendant's having "agreed to a sentencing enhancement for fraud causing losses" more than 145 times the amount restrained.  *Id.*[6]

Here, the government *initially* estimated that the defendant "will be ordered to pay approximately tens of millions of dollars in restitution to his victims."  Restraint Mot. 2.  It based this calculation on the losses that six victims testified to at trial, applied across the "millions of likely victims."  *Id.* at 2 n.1.  After proffering that estimate, however, the government acknowledged, as noted above, that "the total loss amount" under Section 2B1.1 cannot "reasonably" be determined, "due to difficulties with calculating the reduction in the value of the Safemoon securities to all investors caused by the offense."  Karony Loss Calculation Letter 1-2.

Karony argues that this concession means the government will not be able to show *any* loss for restitution purposes.  *See id.*  The government responds (persuasively), however, that their inability to estimate *total* 2B1.1 losses with precision does not mean they will be unable to establish

_____

[6] The defendant stipulated "fraud that amounted to losses exceeding $80 million," which is more than 149 times the $536,000 the district court had restrained.  *Catoggio*, 698 F.3d at 66.

any victim's losses with enough precision for restitution purposes. Gov't Reply Loss Letter 2-3, ECF No. 233.

Still — and to the Court's surprise — the government has not provided any updated estimate of restitution in support of its motion for asset restraints. All it can say, apparently, is that it has been "diligent in its efforts to contact potential victims," but cannot know "how many victims" will file affidavits of loss. *Id.* at 3 n.2. The government expects to be able to provide this information only on October 17, despite the fact that it is seeking significant restraints *now* (and has been since August).

Given the government's inability to provide any assurance that the eventual restitution order is "certain to exceed" the amount restrained, *Catoggio*, 698 F.3d at 69, the Court cannot simply order the restraint of Karony's assets in their entirety. Instead, the Court must assure itself that any restraint will be necessary for restitution. This assurance is easily achieved, despite the government's reticence, in light of the following extremely conservative calculation:

- The government reports that there were "millions" of SafeMoon token holders during the period of the charged conspiracy. ECF No. 233, at 3 n.2. This comports with the evidence presented by both sides at trial. *See, e.g.*, Trial Tr. 332:2-8, 1593:23-24, 2400:4-14.

- Six victims testified at trial, to a total loss of "over $25,000" – about $4,000 per testifying victim.  ECF No. 233, at 3 n.2.

- The testifying victims' average loss probably exceeds the average for *all* victims, given that the trial witnesses were hand-selected by the government.  We will assume a **loss of $500 per victim**, to be conservative in light of *Catoggio's* requirements.

- Some of the holders during the investments period would have experienced net *gains*, given the volatility of the token's price, meaning that we should not use "millions" of victims to extrapolate the total loss for restitution purposes.  Instead, we will assume that only **500,000 people lost money.**

- To be conservative (again), we will assume that only **5% of those victims will submit valid loss affidavits.**

- Even on these extremely cautious assumptions, the restitution award will still be many multiples of the $4,012,816.02 that the government is asking to restrain: 500,000 victims * 5% rate of valid affidavits * $500 per valid restitution claim = $12,500,000, which is approximately three times the amount of the restraint at issue.

On this math, *Catoggio* authorizes the Court to continue to restrain the approximately $4 million in Citibank funds in anticipation of an eventual restitution order.

Karony offers two specific reasons that *Catoggio* does not govern here: (1) the case was abrogated by *United States v. Luis*, 578 U.S. 5 (2016) (plurality opinion); and (2) it applies only in connection with a *re*-sentencing.  Neither of these arguments carry the day.  As to *Luis*, district court must

10

continue to follow binding Second Circuit precedent unless "an intervening Supreme Court decision has so clearly undermined [that] precedent that it will almost inevitably be overruled." *Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC,* 105 F.4th 46, 53-54 & n.36 (2d Cir. 2024). And *Luis* did not "so clearly undermine[] [*Catoggio*] that it will almost inevitably be overruled." *See id.* at 54 n.36. Indeed, *Luis* addressed a different issue: it held that "the *pretrial* restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." 578 U.S. at 13-14 (emphasis added). Like the defendant in *Catoggio*, Karony has been convicted.

Nor is Karony correct that *Catoggio* is limited to the re-sentencing posture. It is true that the defendant in that case was awaiting resentencing following remand. But the Second Circuit's holding was not so limited. The court referred to the restraint of "a convicted defendant's funds in anticipation of *sentencing*" generally. *See Catoggio*, 698 F.3d at 65 (emphasis added). The court also approvingly cited and discussed several cases where a defendant's assets were restrained "after a jury has found a defendant guilty" and "pending sentencing." *Id.* at 67-68. It is not surprising, therefore, that several district courts have restrained funds pending an initial sentencing, rather than resentencing. *E.g.*, *United States v. Kelly*, 627 F.

Supp. 3d 148, 152 (E.D.N.Y. 2022), *aff'd*, 128 F.4th 387 (2d Cir. 2025); *United States v. Garrett*, No. 13-CR-149, ECF No. 494.

      The restraint of funds in the four Citibank accounts at issue will be continued until sentencing.

**B.    *Monsanto* Hearing**

      Karony next argues that, because he wishes to use restrained funds to pay for counsel, he is entitled to a *Monsanto* hearing.  If "a criminal defendant [is] seeking to use restrained funds to hire counsel of choice," *Monsanto* protects the defendant's Sixth Amendment rights by requiring "an adversarial, pre-trial hearing" to evaluate whether those funds are properly restrained.[7]  *United States v. Bonventre*, 720 F.3d 126, 128 (2d Cir. 2013); *see also Luis*, 578 U.S. at 22-23 (holding that only tainted assets can be restrained pretrial and that the Court will often need to conduct a tracing analysis).

      The cases Karony relies upon do not entitle him to a *Monsanto* hearing.  *Monsanto* and its progeny are about the interaction of *pretrial* asset restraints and the Sixth Amendment.  *See United States v. Monsanto*, 491 U.S. 600, 612 (1989) (addressing "pretrial restraining order"); *Monsanto*, 924 F.2d at 1190-91 (deciding, on remand from Supreme Court, what

---

     [7] Ordinarily, this entails the court finding there is probable cause "(1) that the defendant committed the crimes that provide the basis for the forfeiture; and (2) that the contested funds are properly forfeitable." *Bonventre*, 720 F.3d at 128.

procedure is required for a "pretrial restraining order"); *Kaley v. United States*, 571 U.S. 320, 322 (2014) (addressing pretrial restraint on defendant's property); *Luis*, 578 U.S. at 10 ("The question presented is whether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice violates the Fifth and Sixth Amendments.").

Karony argues that these cases still govern because he has not yet been "convicted." *See* Clarification Mot. 4-6. But he has been, in at least one sense of the word: conviction can refer to either the return of a guilty verdict or to the entry of judgment. *See Stegemann v. Rensselaer Cnty. Sheriff's Off.*, 648 F. App'x 73, 76 (2d Cir. 2016) ("[T]he word 'conviction' can mean *either* the finding of guilt or the entry of final judgment on that finding."); *Deal v. United States*, 508 U.S. 129, 132 (1993) (holding that in a statute referring to "conviction," it was "unambiguous that 'conviction' refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction").[8]  This understanding accords with the Second Circuit's description in *Catoggio* of restraints

---

[8] His criminal conviction is not yet final and a judgment of conviction has not been entered.  *United States v. Fernandez*, No. 25-206-CR, --- F.4th ---, 2025 WL 2433528, at *8 n.7 (2d Cir. Aug. 25, 2025) ("[A] criminal conviction becomes final with the judgment of conviction and the *imposition* of a sentence.").  But as relevant to his asset restraint argument, Karony has been convicted.

on a "convicted defendant's assets pending sentencing." 698
F.3d at 67. It also accounts for the Supreme Court's concern
about "freez[ing] assets of an indicted defendant" at a time
"when the presumption of innocence still applies." *Kaley*, 571
U.S. at 327. "Once the defendant has been convicted fairly in
the guilt phase of the trial, the presumption of innocence
disappears." *Delo v. Lashley,* 507 U.S. 272, 278-79 (1993) (per
curiam). Karony points to no authority requiring a *Monsanto*
hearing *after* a guilty verdict.

Other courts have relied on the pre- and post-
conviction distinction to the deny release of funds to pay
counsel after conviction. *See United States v. Marin*, No. 15-
CR-252, 2018 WL 5282873, at *4 (E.D.N.Y. Oct. 24, 2018) (denying
request to release bail funds to pay counsel, even though
untainted, because *Luis* does not apply post-conviction);
*Catoggio*, 698 F.3d at 69 (post-conviction restraint to pay
restitution did not violate Sixth Amendment, where defendant had
already pleaded guilty). Karony is not entitled to a hearing
under *Monsanto*.

## C.    Karony's Other Funds

Finally, Karony argues that the government should not
be allowed to forfeit the contents of his FV bank account and
seeks "clarification" on the legal status of these and other
assets. The government reports that the FV bank accounts are

subject to administrative forfeiture proceedings before an agency, not this Court. *See* Continuation Mot. at 4. This Court will not opine on the propriety of that proceeding. First, once administrative forfeiture proceedings have been initiated, objections to the forfeiture must generally be raised in the administrative proceeding. *See, e.g.*, *United States v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d 472, 479 (2d Cir. 1992). Second, Karony is arguing that "claim preclusion rules" bar the administrative forfeiture. Karony Reply Brief 8, ECF No. 226. But "[d]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second*" tribunal — here, the one presiding over the administrative forfeiture. *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012).

Nor will the Court opine generally on the "legal status" of Karony's other funds: absent an indication that some party has moved to restrain them, the Court must refrain from adjudicating "hypothetical or abstract disputes." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also United States v. Kam*, No. 10-CR-875, 2011 WL 3039589, at *6 (E.D.N.Y. Mar. 18, 2011) ("Because the [funds at issue are] not currently restrained, the Court need not entertain a *Monsanto* motion for release of those funds."), *report and recommendation adopted*, No. 10-CR-875, 2011 WL 3104379 (E.D.N.Y. July 20, 2011).

15

### III. Conclusion

The asset restraint at ECF No. 220 will be continued until sentencing and the issuance of a judgment. Karony's motion for a *Monsanto* hearing is denied.


SO ORDERED.


                                    /s/ Eric Komitee
                                    _____
                                    ERIC KOMITEE
                                    United States District Judge


Dated:    September 19, 2025
          Brooklyn, New York